ED SMITH AND JIM WRIGHT v. THE STATE.

No. 11520. Delivered February 6, 1929.
Rehearing denied June 26, 1929.

The opinion states the case.

*Newman & McCollum* of Brady, *Stevenson, Baker & Kretsch* of Junction City, and *Morris & Morris* of San Antonio for appellants.

*F. H. Hammond,* District Attorney, *Carl Rungey,* County Attorney, *Black & Groves, Robert M. Turgsin* and *A. A. Dawson* of Canton, State's Attorneys, for the State.

MARTIN, JUDGE.—The indictment is in two counts. The first count charges appellants with the theft of seventy-seven head of goats belonging to L. B. Eckert, and the second count charges them with unlawfully receiving this property from some person to the grand jurors unknown. Wright was convicted under the first count and Smith under the second, each receiving a penalty of two years in the penitentiary.

Wright was an employee of Smith. Smith and Eckert occupied adjoining ranches and each owned goats running in goat proof inclosures. About the middle of May Eckert found on the premises of Smith about fifty-six head of goats, which he identified as his own. Most of them had been freshly marked and some of them branded. The horns of some of them showed to have been recently sawn. The State used the witness Ellis, who had worked for appellant Smith from about September until May with the exception of a short interval about Christmas time. The substance of Ellis' testimony was that appellant Wright, one Roberts, himself and some others were hunting cattle when they observed a small bunch of goats in another pasture belonging to appellant Smith and adjoining Eckert's pasture. He was directed by Wright to drive these goats to Smith's ranch house and pen them, which he did. Circumstances were testified to by Ellis which showed that appellants thereafter marked and branded some of the goats and sawed off some of their horns, after which operation the witness turned the goats out. About the time appellant Smith was suspicioned of stealing the goats, he cautioned Ellis to say nothing. When the goats were recovered by their owner, both he and the officers testified to finding freshly sawed goat horns in this same pen where Ellis testified the goats were first placed by him.

The second count of the indictment contains the allegation that "the said Ed Smith and Jim Wright did then and there fraudulently *receive* and *conceal* the said property then and there well knowing the same to have been so acquired."

Motion was made and overruled to quash this count of the indictment because it was duplicitous in that it alleged two distinct felonies separate in their nature, to-wit, the offense of concealing and the offense of receiving stolen property. Art. 1430 of the Penal Code provides:

"Whoever shall receive or conceal property which has been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, knowing the same to have been so acquired, shall be punished in the same manner as if he had stolen the property."

This law was passed by the Seventh Legislature of the State of Texas in the year 1858. The exact point raised by appellant does not seem to have been expressly passed on in Texas, but many cases are found, the expressions of which clearly indicate that this statute has been universally regarded as defining different phases of the

same offense which might be charged conjunctively in the same count of an indictment, they being in no way repugnant to each other and punishable in the same manner. See following authorities: Moore v. State, 12 S. W. 407; Brothers v. State, 22 Tex. Crim. App. 447; Nourse v. State, 2 Tex. Crim. App. 313; Day v. State, 14 Tex. Crim. App. 26; Prendergast v. State, 57 S. W. 850; Morris v. State, 121 S. W. 1112; Cuilla v. State, 187 S. W. 210; Gault v. State, 269 S. W. 92. The question presented has been frequently decided by the courts of other jurisdictions in passing on similar statutes. and has almost universally received the same construction. State v. Phipps, 64 N. W. 411; State v. Feuerhaken, 65 N. W. 300; Smith v. State, 52 N. E. 827; Stevens v. Commonwealth, 47 Mass. 242; People v. Fitzgerald, 51 Colorado 176; McClure v. People, 27 Colorado 358; State v. Nelson, 29 Maine 334. While we are not entirely satisfied with the logic of some of these cited cases and with the entire lack of reasoning in others, we would not feel justified in striking down an indictment, the form of which has so long and so universally been regarded as valid and sufficient, unless some compelling reason were advanced for doing so. We regard the adjudicated cases as settling the matter against appellant's contention, and follow these precedents.

It is contended that there was no proof to sustain the allegation of the indictment that appellants received the property from "some person or persons to the grand jurors unknown." We regard the proof as sufficient to sustain the allegation of the indictment. The importance of the question does not seem to justify a recital of all the facts introduced to sustain this part of the indictment.

Appellant insists that the Court erred in failing to charge on alibi as a defense, especially as to appellant Wright. A sufficient answer to this contention may perhaps be found in Wright's testimony, which could hardly be regarded as sufficiently definite to fix his absence on the day of the alleged offense. However, if we comprehend the State's theory, it is that Wright did not himself steal the animals in question but acted through his innocent agent, who was the witness Ellis. It has been frequently held that "in law the defendant is present when an act is done by his innocent agent, although in fact at that time he was in a distant county or state." Madison v. State, 16 Tex. Crim. App. 442; Doss v. State, 21 Tex. Crim. App. 509; Branch's P. C., Sec. 683. If our conception of the State's theory is correct, then Wright's presence was not necessary nor was it contended that he was present when the offense was com-

mitted. Upon such an hypothesis it is obvious that a defensive charge on alibi was not called for.

All of Wright's evidence as to his inability to ride at about the time of the alleged offense, made so by certain physical infirmities attempted to be detailed by him, was admissible. It tended to disprove the testimony of Ellis that Wright was riding in the pasture at the time of the offense and to establish the defensive theory that the goats in question came into the Smith pasture without Wright's knowledge at the time he was too sick to ride. So small a portion was ruled out that we would hardly be justified in reversing·for this action and only mention it in passing.

By Bill of Exception No. 3 it is made to appear that while the State's witness Oscar Ellis was upon the stand and after he had testified to the incriminating facts already mentioned above, he was asked on cross-examination if it was not true that he was convicted in San Marcos, Hays County, Texas, in 1920 of being a juvenile, delinquent and incorrigible boy, and if that prosecution did not grow out of the fact that he was under legal accusation of burglary by breaking in a meat market. The testimony tends to show that witness at the time of the accusation against him in Hays County was only about ten or eleven years old. The trial court sustained an objection to this apparently because inhibited by the terms of Art. 1092, C. C. P. (1925), part of which reads as follows:

"A disposition of any delinquent child under this law or any evidence given in such case, shall not, in any civil, criminal, or other cause or proceeding whatever, in any court, be lawful or proper evidence against any child for any purpose whatever, except in subsequent cases against the same child under this law."

The trial court, we think, correctly interpreted the terms of this article as intended to protect the accused from the odium and stigma attached to any act of youthful indiscretion which had eventuated in a prosecution. Such in effect was its interpretation by Justice Hawkins in the case of Robinson v. State, 7 S. W. (2nd) 574. Because we think the article above quoted expressly inhibits this testimony, we overrule appellant's contention.

It is next insisted that the testimony made the witness Ellis an accomplice as a matter of law and if mistaken in this, that the question of his being an accomplice vel non should have been submitted to the jury as an issue of fact with an appropriate charge on accomplice testimony. A summary of the facts bearing upon this issue is briefly as follows: The State's evidence tended to prove that

the goats in question were taken about the 16th of May by the witness Ellis as the innocent agent of Appellant Wright; that of appellants tended to prove that whatever goats were driven up by Ellis were driven something like one month prior to May 16th, which was prior to the time Eckert lost any goats. Ellis, however, testified that the bunch of goats driven up by him was in his opinion the same bunch of goats found by Eckert a few days later and taken possession of by Eckert. It was the theory of appellants that Ellis was familiar with the identity of the goats on the Smith ranch which belonged to appellant Smith, as well also as those belonging to Eckert. The goats were found by Ellis near the line between appellant Smith and Eckert in a pasture not inclosed by goat proof fence. Some of them were marked and branded in Eckert's mark and brand. They were driven up by Ellis and penned by him alone, and afterwards were turned out by him after having their appearance altered in the manner before indicated. Appellants contend that all these facts and circumstances were sufficient of themselves to at least raise the issue that Ellis knew he was handling stolen property and was therefore an accomplice. This contention, we think, is correct. Ellis showed enough familiarity with the appearance of the goats to be able to identify those driven up by him as being the same identical goats thereafter claimed and driven off by Eckert. There was nothing to prevent his having noticed while driving them that some of them were in the mark and brand of Eckert. He had handled Smith's goats and from this circumstance alone the jury might have concluded that he knew that the goats in question were not those of Smith, not only from their appearance but from the fact that they were not found in a goat inclosed pasture but near the dividing line between the two ranches, not separated by a goat proof fence. It is worthy of note that the main incriminating facts proven against the appellant Wright were the handling of the goats, which it is contended also shows witness Ellis' connection with the crime. Both Wright and Ellis were mere ranch hands. They both handled the goats in question. The Court submitted the question and the jury found that appellant Wright had a criminal connection with the offense beyond a reasonable doubt. If they show that appellant Wright, a mere ranch hand, was guilty beyond a reasonable doubt, they undoubtedly are sufficient to raise the issue that Ellis, another ranch hand, was criminally connected with the offense and the action of the Court in refusing to submit this as an issue with an appropriate instruction on the law of ac-

complice testimony was such error as demands a reversal. McCormick v. State, 216 S. W. 871; Wyatt v. State, 114 S. W. 812; Barnes v. State, 81 S. W. 735; Reed v. State, 245 S. W. 432. True, Ellis denied any knowledge of their being stolen property, but the appellants were no more concluded by this than the State was by Wright's denial of participation in the theft. Cozine v. State, 220 S. W. 102.

Appellants offered to prove by witness Roberts, who was also a ranch hand and who was shown to have seen both the goats that Ellis penned and those taken away by Eckert, that they were not the same goats. Ellis was permitted to testify that they were the same. The trial court sustained an objection to this offered testimony of Roberts apparently upon the theory that Roberts had not shown such familiarity with the goats in question as would justify the expression of such an opinion. In this the Court was in error. The objection went to the weight rather than to the admissibility of the evidence. Roberts testified to having seen both bunches of goats and a lack of familiarity with them was a matter of argument for the jury but would not justify, we think, its exclusion. Harris v. State, 137 S. W. 373, and authorities there cited.

For the two errors last above pointed out the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.