GLEN HICKEY and CHRIS EDWARD HICKEY, Petition-
ers, *v.* EIGHTH JUDICIAL DISTRICT COURT OF
THE STATE OF NEVADA, IN AND FOR THE
COUNTY OF CLARK, THE HONORABLE JOHN S.
McGROARTY, DISTRICT JUDGE, AND THE HONOR-
ABLE MIRIAM SHEARING, DISTRICT JUDGE,
Respondents, CONSUELO HANNL, Individually and
as Administratrix of the Estate of TONY HERNAN-
DEZ, JR., Real Party in Interest.

No. 19659

November 27, 1989                    782 P.2d 1336

*Edwards, Hunt, Hale & Hansen* and *Trevor Atkin,* Las Vegas,
for Petitioners.

*Eva Garcia,* Las Vegas, for Respondents and Real Party in
Interest.

## OPINION

By the Court, YOUNG, C. J.:

Petitioner (Glen) and his wife took a vacation to a Mexican resort, leaving their teenaged son (Chris) at home alone. In his parents' absence, Chris allegedly hosted a party at their house which lasted for several days. Apparently, the primary activity at this party was the consumption of alcohol.

On December 3, 1986, after allegedly consuming a large amount of alcohol, Chris took a gun from an unlocked gun cabinet, loaded it, and went outside to shoot. Tony Hernandez, Jr., Chris' friend who had also allegedly consumed a large amount of alcohol, asked Chris if he could shoot the gun. Hernandez obtained possession of the gun and began "acting crazy." When Hernandez complained that he could find nothing to shoot, Chris advised him to "shoot into the ground." Hernandez placed the gun under his chin and, while he was still joking, the gun fired and killed Hernandez.

Consuelo Hannl, the administrator of Hernandez's estate, filed in the district court a complaint alleging that Glen was negligent for leaving Chris alone in his home with access to the gun. On April 6, 1988, Hannl petitioned the juvenile division of the Eighth Judicial District Court for permission to inspect Chris' juvenile records. After receiving opposition to the petition, the Honorable John McGroarty, District Judge, granted the motion to inspect Chris' juvenile records. Judge McGroarty specified, however, that Judge Miriam Shearing, who was presiding over Hannl's lawsuit, would have to review Chris' juvenile records to determine if they were relevant to Hannl's action against Glen. Judge Shearing inspected the records and, on January 4, 1989, ruled that Hannl should be permitted to copy Chris' juvenile records. One week later, Judge Shearing entered a formal, written order granting Hannl's motion.

After Judge Shearing announced her ruling on Hannl's motion, Glen requested a stay of that decision. Judge Shearing denied the stay, and later that day, Glen filed in this court a motion to stay enforcement of Judge Shearing's order. On January 5, 1989, this court granted the motion for a stay. Counsel for Glen prepared a

petition for a writ of prohibition challenging the orders of the district court. While he was serving the petition, however, counsel learned that Hannl's counsel had already inspected and photocopied Chris' juvenile records. Therefore, counsel drafted a supplement to the petition which requested a writ of mandamus directing Judge Shearing to exclude Chris' juvenile records from evidence in the lawsuit below and further directing Hannl's counsel to return to the juvenile court the copies of Chris' juvenile records.

Initially, we note that a writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, NRS 34.160, or to control an arbitrary or capricious exercise of discretion. *See* Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). Further, a writ of prohibition may be issued if a lower court acts in excess of its jurisdiction. *See* NRS 34.320; Goicoechea v. District Court, 96 Nev. 287, 607 P.2d 1140 (1980). Neither mandamus nor prohibition will issue, however, where the petitioner has a plain, speedy and adequate remedy, such as an appeal, in the ordinary course of law. NRS 34.170; 34.330. *See also* Heilig v. Christensen, 91 Nev. 120, 532 P.2d 267 (1975), *cert. denied* 423 U.S. 1055 (1976). Finally, mandamus and prohibition are extraordinary remedies, and the decision of whether a petition will be entertained lies within the discretion of this court. *See* Poulos v. District Court, 98 Nev. 453, 652 P.2d 1177 (1982) (mandamus); Bowler v. District Court, 68 Nev. 445, 234 P.2d 593 (1951) (prohibition).

In the present case, Glen and Chris challenge orders of the district court which, taken together, compel discovery of Chris' juvenile court records. This court has previously held that extraordinary relief is available to challenge orders of the district court compelling discovery in civil cases of irrelevant or privileged material where disclosure of the material could cause irreparable harm to the party from whom the material is sought. *See* Schlatter v. District Court, 93 Nev. 189, 561 P.2d 1342 (1977). Because the disclosure of otherwise confidential juvenile court records could have far-reaching consequences on the life of Chris, we will exercise our discretion to entertain the merits of this petition.

The parties agree that the release of Chris' juvenile records is governed by NRS 62.360. That statute provides in pertinent part:

2. The [juvenile] records may be opened to inspection

only by order of the court to persons having a legitimate interest therein. . . .

. . . .

4. Whenever the conduct of a juvenile with respect to whom the jurisdiction of the juvenile court has been invoked may be the basis of a civil action, any party to the civil action may petition the court for release of the child's name, and upon satisfactory showing to the court that the purpose in obtaining the information is for use in a civil action brought or to be brought in good faith, the court shall order the release of the child's name and authorize its use in the action.

Glen asserts that the statute quoted above draws a distinction between the release of a juvenile's name and the release of that juvenile's records. He also states that this distinction is reinforced in another statute which allows the victim of a crime committed by a child to be informed of the disposition of the child's case in the juvenile court, but prohibits the victim from disclosing that information to any other person. *See* NRS 62.193(8). Glen avers that this distinction safeguards the legitimate interest of the state in protecting the identity of youthful offenders and thus enhances the rehabilitative function of the juvenile justice system. Specifically, Glen states that under NRS 62.360(2), the only persons that can have a "legitimate interest" in the records of a juvenile are social workers, law enforcement agencies and other agencies that are involved in the rehabilitation of juvenile offenders. Thus, Glen argues that the plaintiff in a civil action may obtain only the name of a juvenile offender.

Glen's argument is without merit. Initially, we note that juvenile court proceedings were never instituted against Chris as a result of the death of Tony Hernandez. Because NRS 62.360(4) applies only to civil actions arising out of conduct that led to the exercise of jurisdiction by the juvenile court, it does not appear that the subdivision has any application to the case at bar.

We also note that NRS 62.360(2) authorizes the district court to allow the inspection of juvenile records by any person "having a legitimate interest therein." *See also* Pickard v. State, 94 Nev. 681, 585 P.2d 1342 (1978) (confidentiality of juvenile records must yield to right of defendant to cross-examine witnesses regarding bias or prejudice in a criminal case). It is well-established that when this court construes a specific portion of a statute, the statute should be read as a whole and, where possible, the statute should be read to give meaning to all of its parts. *See* Nevada Tax Comm'n v. Bernhard, 100 Nev. 348, 683 P.2d 21 (1984). Although NRS 62.360(4) authorizes the disclosure to a

civil litigant of the name of a juvenile who has committed a tortious act, the purpose of that subdivision is "to permit victims of juvenile offenses to seek civil redress" for their injuries by providing the victim with the name of the person who caused the injury. *See* State in Interest of D. H., 380 A.2d 295, 297 (N.J. Super.Ct.App.Div. 1977). Thus, the purpose of NRS 62.360(4) is to provide the victim of tortious conduct with the name of a juvenile tortfeasor so that the victim may seek recompense for his injuries. To hold that NRS 62.360(4) limits a person proceeding under NRS 62.360(2) to discovery of a juvenile's name would deprive NRS 62.360(2) of any real meaning and would thus violate a basic rule of statutory construction. *See Bernhard,* 100 Nev. at 351, 683 P.2d at 23.

Further, nothing in the NRS 62.360 limits the class of persons who can have a "legitimate interest" in juvenile records; indeed, NRS 62.340(2) clearly vests in the district court wide discretion to determine the persons "having a legitimate interest" in juvenile court records. In exercising its discretion, the district court must balance the need of the requesting party for the records against the interests of society in keeping confidential certain juvenile court records. *See* Ex Parte State Farm Fire and Cas. Co., 529 So.2d 975 (Ala. 1988).

In the present case, Hannl alleges that Glen acted negligently when he left Chris at home alone for several days with access to a gun. If Chris' juvenile court records reflect a pattern of alcohol-related offenses or other reckless conduct, those records would be relevant to whether Glen acted negligently when he allegedly entrusted his home and its contents to Chris. Thus, the records would be directly relevant to Hannl's cause of action. Moreover, the procedure used below, *i.e.,* an initial determination by the juvenile court to disclose Chris' records, subject to a subsequent *in camera* inspection of the juvenile records by a different district court judge to determine the relevance of the records, was clearly designed to safeguard society's interest in the confidentiality of the records. Finally, as noted above, Judge Shearing specified in her order that the information contained in Chris' juvenile court records could be used only in the litigation below, and that the use of the records at trial would be subject to a subsequent decision by the district court on whether the material will be allowed to become a part of the court record. Therefore, it is evident that the district court has not foreclosed the possibility that all or part of Chris' juvenile court records will be suppressed in the future.

Under the circumstances of this case, we conclude that the district court entered an order that was narrowly tailored to safeguard society's interests in the confidentiality of Chris' juve-

nile records, while preserving Hannl's right to access information that is relevant to her cause of action below. Therefore, we conclude that the district court did not exceed its jurisdiction or abuse its discretion when it ordered disclosure of Chris' juvenile records. Accordingly, we conclude that our intervention by way of extraordinary writ is not warranted at this time. Therefore, we deny this petition.

SPRINGER and ROSE, JJ., concur.

STEFFEN, J., with whom MOWBRAY, J., agrees, dissenting:

Respectfully, I dissent.

I am unable to join in the majority opinion because of what I perceive to be a compellingly clear statute that mandates a contrary result.

NRS 62.360(4) specifically addresses the extent to which a minor's juvenile court records may be utilized in civil actions. By its precise terms, *only* the juvenile's name may be released and used in the action. Long ago, we declared as an elementary principle of statutory construction that if the language of a statute "is susceptible of but one natural, honest construction, that alone can be given." State v. California Mining Co., 13 Nev. 203, 217 (1878). Moreover, in State ex rel. Copeland v. Woodbury, 17 Nev. 337, 343, 30 Pac. 1006, 1008 (1883), we said that "[w]here a statute is clear, plain and unambiguous, we have repeatedly declared that there is no room for construction and the law must be followed regardless of results." We have also expressly recognized that it is not the business of the court to construe clear, unambiguous statutes that are impractical or unworkable, State ex rel. Caughlin v. Alt, 22 Nev. 203, 212, 37 Pac. 486, 488 (1894), or questionably just or equitable, In re Walter's Estate, 60 Nev. 172, 186, 104 P.2d 968, 974 (1940).

Given the clear limitations set forth in NRS 62.360(4), I am unpersuaded by the majority's conclusion that NRS 62.360(2) also applies to civil actions. By adopting such a position, the majority have effectively nullified NRS 62.360(4). The broad language of NRS 62.360(2), if applied to paragraph 4, would render the specific restrictive provisions of the latter paragraph redundant and without purpose. Obviously, if a civil litigant is accorded unlimited access and use of a juvenile file under paragraph 2, a court order authorizing the release and use of a child's name *only,* under paragraph 4, would be senseless. I therefore conclude that the rule of statutory construction cited by the majority, requiring this court to read a statute as a whole and, where possible, give meaning to all of its parts, Nevada Tax Comm'n v. Bernhard, 100 Nev. 348, 683 P.2d 21 (1984), has been violated by the majority's nullification of paragraph 4.

Moreover, I am unable to find within paragraph 4 a basis for the majority's conclusion that the paragraph "applies only to civil actions arising out of conduct that led to the exercise of jurisdiction by the juvenile court." Clearly, the term "conduct" within paragraph 4 refers to the basis for the civil action, not the jurisdiction of the juvenile court. Although, as a practical matter, the conduct constituting the basis for the civil action and the juvenile court jurisdiction may most often be identical, it seems clear from the statute that it need not be the same conduct. I must therefore conclude that paragraph 4 is applicable in the instant case despite the fact that juvenile proceedings were never instituted against Chris over the death of Tony Hernandez.

In my opinion, petitioners' contention that paragraph 2 refers only to social workers, law enforcement agencies and other agencies and individuals concerned with a juvenile's rehabilitation and treatment within the juvenile or criminal justice system has merit. By construing the paragraph's reference to "persons having a legitimate interest" to persons in the aforementioned categories, both paragraphs 2 and 4 would retain meaningful purpose in accordance with the legislative intent to severely restrict access to official information concerning a minor's involvement in the juvenile justice system.

Because it is not this court's legitimate prerogative to alter the thrust of a clearly worded statute, I have refrained from discussing my views concerning the wisdom of paragraph 4. I nevertheless have no difficulty recognizing a reasonable social purpose within the narrow limitations of the language selected by the legislature in its enactment of paragraph 4.

For reasons noted above, I would have granted petitioners' request for relief.