**Office of the Attorney General**
**State of Texas**



DAN MORALES
ATTORNEY GENERAL

March 21, 1995

Honorable D. August Boto
Cooke County Attorney
3rd Floor, Courthouse
Gainesville, Texas 76240

Opinion No. DM-334

Re: Whether a victim of delinquent conduct by a child may be a person having a "legitimate interest in the proceeding" for purposes of section 51.14(a)(4) of the Family Code, and related questions (RQ-728)

Dear Mr. Boto:

Your request for an opinion involves a victim of vandalism by a child who has been the subject of a juvenile delinquency proceeding arising out of the vandalism. You ask whether a court may grant leave to such a victim--as a "person . . . having a legitimate interest in the proceeding" under Family Code ("code") section 51.14(a)(4)--to inspect the juvenile court file of the child to prepare for trial of a civil action by the victim against the child arising out of the same incident of vandalism. You specifically ask whether such a victim may obtain "a certified copy of the admission of guilt on the part of the juvenile," a sworn stipulation of evidence by a child that has been admitted into evidence in support of the child's plea of true to a delinquency charge. This document would be "use[d] . . . in an offer of proof to establish liability for the [property] damage" suffered by the victim. The victim also would wish to "examine . . . judicial records . . . in an effort to secure the names of witnesses who could testify to prove liability on the part of" the child.

Code section 51.14(a) provides in part as follows:

(a) . . . [A]ll files and records of a juvenile court, a clerk of court, or a prosecuting attorney relating to a child who is a party to a proceeding under this title are open to inspection only by:

(1) the judge, probation officers, and professional staff or consultants of the juvenile court;

(2) an attorney for a party to the proceeding;

(3) a public or private agency or institution providing supervision of the child by arrangement of the juvenile court, or having custody of the child under juvenile court order; or

> (4) with leave of juvenile court, any other *person*, agency, or institution *having a legitimate interest in the proceeding or in the work of the court*. [Emphasis added.]

The code does not define what such a "legitimate interest" would be. . We believe, however, that a person's interest in access to juvenile records and files would not be "legitimate" if the person's purposes for seeking access were inconsistent with the purposes of code title 3, which deals with delinquent children and children in need of supervision. In this regard, we will consider section 51.14 in connection with code section 51.13, which provides in part as follows:

> (a) An order of adjudication or disposition in a proceeding under this title is not a conviction of crime, and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment.

> (b) The adjudication or disposition of a child *or evidence adduced in a hearing under this title* may be used only in subsequent proceedings under this title in which the child is a party or in subsequent sentencing proceedings in criminal court against the child to the extent permitted by the Texas Code of Criminal Procedure, 1965. [Emphasis added.]

One of the purposes of section 51.13(a) and (b) and section 51.14(a) is found in code section 51.01: *"consistent with the protection of the public interest*, to remove from children committing unlawful acts the taint of criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation." Fam. Code § 51.01(3) (emphasis added). Similarly, the Texas Court of Criminal Appeals inferred that a predecessor of section 51.13(b) was intended to protect children from the "odium and stigma attached to any act of youthful indiscretion which had eventuated in a prosecution." *Smith v. State*, 18 S.W.2d 1070, 1072 (1929). Thus, for example, the fact that a person has been the subject of a juvenile court proceeding generally is not admissible to discredit that person's testimony in another proceeding. *Rivas v. State*, 501 S.W.2d 918, 920 (Tex. Crim. App. 1973); *Smith*, 18 S.W.2d at 1072; *Carmona v. State*, 670 S.W.2d 695, 698 (Tex. App.--Texarkana 1984), *aff'd*, 698 S.W.2d 100 (Tex. Crim. App. 1985). Accordingly, Texas Rule of Civil Evidence 609 makes clear that, generally, "[e]vidence of juvenile adjudications is not admissible" to impeach a witness's credibility.

Recognizing the legislature's intention to protect a person from the permanent stigma of an adjudication of delinquency, we also recognize that such protection is not absolute but must be "consistent with the protection of the public interest." Fam. Code § 51.01(3). In Texas, minors generally are civilly liable for their own tortious conduct. *E.g., Chandler v. Deaton*, 37 Tex. 406 (1872-1873). Furthermore, section 33.01 of the code provides that "[a] parent . . . is liable for any property damage proximately caused by . . . the wilful and malicious conduct of a child who is at least 12 years of age but under 18

years of age."   The purpose of this provision and code section 33.02, which limits recovery for such damage to actual damages not exceeding $15,000 per act, "is to protect and compensate property owners from the wilful and malicious destruction of their property by minors." *Buie v. Longspaugh,* 598 S.W.2d 673, 675 (Tex. Civ. App.--Fort Worth 1980, writ ref'd n.r.e.).

Although there is no Texas case in point, our research has uncovered cases from other states in which the reviewing court, construing similar confidentiality statutes, upheld a lower court's determination that a victim's interest in inspecting records of a juvenile proceeding was a "legitimate" or "proper" interest.   One such case is *Hickey v. Eighth Judicial District Court,* 782 P.2d 1336 (Nev. 1989).   There the person requesting inspection was the administrator of the estate of a boy who had accidentally killed himself with a gun his friend Chris had removed from an unlocked cabinet while being left home alone by vacationing parents. *Id.* at 1337.   The administrator had filed suit in district court on behalf of the estate, alleging that Chris's parents had been negligent in leaving him home alone with access to the gun, and she also had filed a petition for inspection of Chris's juvenile records relating to the shooting incident. *Id.*   The Supreme Court of Nevada held that the lower court did not abuse its discretion in determining that the estate was a person with a "legitimate interest" in juvenile court records sought in connection with the estate's pending wrongful death action arising out of the same occurrence that was the basis of the juvenile court proceeding. *Id.* at 1339.

Another case, *Daniels v. National Fire Insurance Co.,* 394 So. 2d 683, 683 & nn.1-2 (La. Ct. App.), *writ denied,* 397 So. 2d 806 (La. 1981), involved a plaintiff in a wrongful death action who had been admitted, as a person with a "proper interest," to a juvenile adjudication hearing arising out of the same occurrence, under a Louisiana law providing that "[t]he court may admit [to a juvenile adjudication hearing] any other person who has a proper interest in the [juvenile case] proceedings or the work of the court." The Louisiana appellate court interpreted this statute as permitting the plaintiff to obtain a copy of the transcript of the hearing for use in the wrongful death action in spite of another Louisiana law providing that "juvenile records shall be confidential." *Id.* at 684. The court commented, "The shield of confidentiality was not designed and cannot be permitted to fraudulently defeat civil reparation of juvenile wrong." *Id.* at 683-84.

In another case, the reviewing court reversed a lower court's order denying access to juvenile court files sought for use in a civil suit arising out of conduct that was the subject of the juvenile proceeding.   That case, *Ex parte State Farm Fire & Casualty Co. v. United States Fidelity & Guaranty Co.,* 529 So. 2d 975 (Ala. 1988), is even closer factually to the kind of situation that you inquire about than the *Hickey* and *Daniels* cases because it involves a civil claim arising out of conduct causing property damage rather than death.   There, a trial court had denied a motion by two insurance companies for access to the juvenile court files of two seventeen-year-olds whom the companies had sued for a declaration of the companies' rights and obligations under policies insuring the children. *Id.* at 975.   Because the children had allegedly caused a fire and the policies

excluded coverage for property damage intentionally caused by insureds older than thirteen years, the companies desired access to law enforcement records and the testimony of police and fire investigators regarding the fire in a juvenile proceeding that had adjudicated both children to be delinquent for the commission of arson. *Id.* at 975-76. The Alabama high court concluded that the confidentiality right in that state's analogue to section 51.13 must yield, *id.* at 976, when information in juvenile records and files "is essential and not otherwise reasonably available" in a civil litigant's lawsuit, *id.* at 977. The court thus implicitly held that a civil litigant, as a matter of law, is a "person . . . having a legitimate interest in the case," Ala. Code § 12-15-101(b)(3), to the extent that the juvenile records contain such essential and otherwise unavailable information. *See* 529 So. 2d at 976 (concluding that trial judge erred "as a matter of law" in denying request). The court distinguished its earlier decision in *Ex parte Guerdon Industries*, 373 So. 2d 322 (Ala. 1979)--which had upheld a lower court's order denying access to juvenile court files--on the ground that, there, the juvenile was not a litigant in the civil action for which access was requested. *State Farm*, 529 So. 2d at 976. The *State Farm* court reversed the trial court's order with instructions to review the requested records and files *in camera* and to make available for inspection and use at trial, in accordance with the rules of evidence, any information found to be "essential and not otherwise reasonably available in the petitioners' civil action." *Id.* at 977.

Finally, the court in *Wisconsin ex rel. Herget v. Circuit Court*, 267 N.W.2d 309 (Wis. 1978), adopted a standard similar to *State Farm*'s standard of "essential and not otherwise reasonably available" as proper for determining whether to grant access to police records of a juvenile investigation when such records are sought in connection with a civil claim arising out of conduct that was the subject of the investigation. *Herget* was a proceeding by a juvenile for a writ of prohibition to determine the lower court's power to release the juvenile's police records for discovery in a civil action for damages arising from an incident of vandalism that was the subject of the police investigation and a juvenile court proceeding. *Id.* at 310-12. The Wisconsin statute at issue provided in part, "'Peace officers' records of children shall be kept separate from records of persons 18 or older and shall not be open to inspection or their contents disclosed except by order of the court.'" *Id.* at 310 n.2 (quoting Wis. Stat. § 48.26(1)). The statute thus lacked any general express limitation, such as "legitimate interest," to the court's discretion to grant access to the records.[1] Nevertheless, the court held discovery of law enforcement records to be permissible only when "the need for confidentiality is outweighed by the exigencies of the circumstances." *Id.* at 317.[2]

---

[1]Compare code section 51.14(d), which contains no general express provision for access to law enforcement files concerning a child by anyone other than the juvenile court having jurisdiction of the child "in any proceeding," an attorney of record in such a proceeding, and law enforcement officers "when necessary for the discharge of their official duties." You do not ask about, and we do not consider, the scope of this confidentiality provision.

[2]The court in *Hickey* similarly stated as follows, in regard to the determination of whether a person has a "legitimate interest" in the disclosure of juvenile court records: "In exercising its discretion,

The *Herget* court then articulated procedures and standards for determining whether and how to grant access to juvenile police records. *Id.* at 317. We do not presume that the courts of this state will necessarily recognize exactly the same procedures and standards for determining whether to grant inspection of juvenile court records to persons with a "legitimate interest" under section 51.14(a), but we believe the procedures and standards announced in *Herget* are consistent with the policies of Texas and therefore are worthy of quotation at length as a helpful suggestion:

> So that the court may determine plaintiffs' need for the information requested, the plaintiffs must describe to the court as specifically as possible the type of information they seek, the basis of their belief that the information is contained in the police records, the relevance of the information to plaintiffs' cause of action, the probable admissibility of the information as evidence at trial, the efforts they have made to obtain the information from other sources, and the hardship to plaintiffs' cause should the discovery order not issue. The defendant should be given the opportunity to present to the court its position concerning disclosure of all or part of the records.
>
> The court must then make an *in camera* inspection of [the child's] police file.
>
> If the court determines that certain information contained in [the child's] police file is essential to plaintiffs' cause and cannot be obtained with reasonable effort from other sources, the court must then determine whether plaintiffs' need for that information outweighs society's interest in protecting its confidentiality. In making this determination the . . . court must balance two private and two societal interests: the victim's interest in recovering for the damage he has suffered and the juvenile's interest in rehabilitation and avoiding the stigma of revelation; the redress of private wrongs through private litigation and the protection of the integrity of the juvenile justice system.
>
> If, after balancing these interests, the . . . court determines that certain information should be disclosed, the court must carefully tailor its discovery order to permit disclosure of only that information. The trial court shall make a record of the reasons for its

---

(footnote continued)

the . . . court must balance the need of the requesting party for the records against the interests of society in keeping confidential certain juvenile court records. *See Ex Parte State Farm Fire and Cas. Co.*, 529 So.2d 975 (Ala. 1988)." 782 P.2d at 1339.

> determination to allow or not to allow discovery, and the record shall
> be sealed.

*Id.* (footnotes omitted).[3]

The consensus of similar holdings in other states convinces us that a Texas court would likely hold that in some circumstances the public policy in favor of the compensation of property owners for damages resulting from vandalism may justify a juvenile court's determination that a victim of delinquent conduct or conduct indicating a need for supervision is a "person . . . having a legitimate interest in the proceeding" under subsection (a)(4) of section 51.14. Nothing in subsection (a)(4) limits the class of persons who may have a "legitimate interest in the proceeding." As this office said in Attorney General Opinion H-264, the determination of whether a person has such an interest "rests in the sound discretion of the juvenile court." Attorney General Opinion H-264 (1974) at 2. Similarly, in *Hickey* the Supreme Court of Nevada held that Nevada's statutory analogue to code section 51.14(a)(4) "clearly vests in the . . . court wide discretion to determine the persons 'having a legitimate interest' in juvenile court records." 782 P.2d at 1339. Because the determination of "legitimate interest" would involve the weighing of evidence and the exercise of judicial discretion, we would not be able to determine in an advisory opinion whether a particular victim would succeed in a request for access under section 51.14(a)(4).

Next you ask whether the phrase "open to inspection only by [the persons and entities set forth in subsection (a)]," as used in subsection (a) of section 51.14, means that juvenile files and records may only be inspected, as opposed to copied, or that only the persons and entities set forth in subsection (a) may inspect juvenile files and records, or both. Your question draws attention to the ambiguity that arises from the placement of the word "only" between an adverbial phrase ("to inspection," which modifies "open") and an adjectival phrase ("by [the persons and entities set forth in subsection (a)]," which modifies "inspection"), both of which it might modify.

In written English the normally proper position of *only* within a sentence is usually immediately before the word or phrase *only* modifies. *See* THEODORE M. BERNSTEIN, THE CAREFUL WRITER: A GUIDE TO MODERN ENGLISH USAGE 315-17 (1965). If the legislature intended to follow this rule, the meaning of subsection (a) is that only the persons and entities set forth therein may inspect juvenile files and records, not that such persons and entities may only inspect juvenile files and records.

---

[3]The court in *Herget* further ruled that police officers could not be deposed regarding the contents of their own records of the juvenile investigation at issue until the court granted disclosure of their records, and then only regarding the portions that were released for disclosure. 267 N.W.2d at 318. To distinguish between the information in the records themselves and the officers' own independent recollections of that information, the court concluded, would violate the intent of the confidentiality statute. *Id.*

This construction of subsection (a) is consistent with prior law, which provided, "Juvenile Court Records shall not be inspected by persons other than probation officers or other officers of the Juvenile Court unless otherwise directed by the court." V.T.C.S. art. 2338-1, § 15 (1971) (repealed by Act of May 24, 1973, 63d Leg., R.S., ch. 544, § 3, 1973 Tex. Gen. Laws 1460, 1485). "[W]ith respect to juvenile court legal and social records, the only material variation from the old law is to specify those persons who are deemed to have a legitimate interest in the proceedings such that they should have access to those records without special leave of the juvenile court." Robert O. Dawson, *Delinquent Children and Children in Need of Supervision: Draftman's Comments to Title 3 of the Texas Family Code*, 5 TEX. TECH L. REV. 533-34 (1974). We therefore conclude that the word "only" in subsection (a) does not modify the phrase "to inspection."

This conclusion does not end the inquiry into the meaning of subsection (a), however, but rather leads us to your third question:

> If the foregoing question is answered in a way that specifies that the word "only" limits the class of persons who may obtain access, does the word "inspection" . . . mean that the paperwork can only be looked at, or does it permit paperwork to be copied and certified for proper purposes?

In this regard, it is important to consider that denial of access to inspect effectively constitutes denial of access to copy, for allowing access to a copy would thwart the purpose of denying access to inspect the original. A statutory grant of access to inspect, however, does not necessarily include permission to obtain a copy. Therefore, the meaning of the provision depends on whether the provision *grants* access to inspect or *restricts* access to inspect.

The legislature's purpose in enacting section 51.14(a) and its statutory predecessors was not to *grant* access to inspect juvenile court files and records, for the public generally has a common-law right to inspect and copy court records. *See Nixon v. Warner Communications*, 435 U.S. 589, 597-98 (1978); *Times Herald Printing Co. v. Jones*, 717 S.W.2d 933, 936 (Tex. App.--Dallas 1986), *vacated on other grounds per curiam*, 730 S.W.2d 648 (Tex. 1987); *see also* Attorney General Opinion DM-166 (1992) at 3 (discussing common-law right of access to court records).[4] Rather, the intention was

---

[4]In 1990 the Supreme Court of Texas adopted Texas Rule of Civil Procedure 76a, which provides that court records other than adjudicative orders and opinions, which may not be sealed,

> *are presumed to be open to the general public* and may be sealed only upon a showing of all of the following:
>
> (a) a specific, serious and substantial interest which clearly outweighs:
>
> (1) this presumption of openness;

to *restrict* access to inspect, and concomitantly to copy, juvenile records. Therefore, to the extent the provision leaves prior law undisturbed, its language does not address the question of whether copying also is permitted. We conclude that the word "inspection" does not indicate any legislative intent regarding whether records may only be inspected or may also be copied.

We further believe, however, that subsection (a)(4) does potentially limit the mode of access to records, although not for the reason that your third question suggests. As we said above, one of the purposes of sections 51.13 and 51.14 is to protect a person from the permanent stigma of an adjudication of delinquency insofar as such protection would be "consistent with the protection of the public interest." Fam. Code § 51.01(3). The effectuation of this purpose requires that a grant of access to records to a "person . . . having a legitimate interest" under section 51.14(a)(4) should not include permission to copy the records unless the public interest requires that the records be copied.

The public interest may require in some circumstances that a victim of delinquent conduct or conduct indicating a need for supervision have a copy of a document in a juvenile court file. If the document contains information that, in the words of the court in the *State Farm* case, "is essential and not otherwise reasonably available in" a related civil action between the victim and the juvenile, 529 So. 2d at 977, it may be within the juvenile court's discretion under section 51.14(a)(4) to issue a narrowly tailored order that permits the release of a copy but limits the use of the copy to the related action. On the other hand, if the information in the document also exists in another admissible record outside the juvenile court file or is adducible by examination of an available witness, then the court may be justified in concluding that the information is otherwise reasonably available and therefore that a copy of the information is not necessary. (Of course, we are unable to review the appropriateness of a court's exercise of discretion under section 51.14(a)(4).)

We realize that our conclusion that the public interest sometimes may justify the release of a copy of a record in a juvenile court file, in light of the facts you pose regarding the stipulation of evidence, suggests that documentary evidence that has been adduced in a juvenile court hearing may be admissible in a proceeding other than those expressly permitted under code section 51.13(b): "subsequent proceedings under . . . title [3] in which the child is a party or . . . subsequent sentencing proceedings in criminal court

---

(footnote continued)

> (2) any probable adverse effect that sealing will have upon the general public health or safety;

> (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted. [Emphasis added.]

Paragraph 2 of rule 76a excepts from the definition of *court records* "documents filed in an action originally arising under the Family Code." Paragraph 9 provides in part, "Access to documents in court files not defined as court records by this rule remains governed by existing law."

against the child to the extent permitted by the Texas Code of Criminal Procedure, 1965." It is arguable, to the contrary, that section 51.13(b) bars the use of any evidence, testimonial, documentary, or real, in any proceeding other than those excepted by the statute if that evidence was offered in a juvenile court hearing.

Once again, we have found no Texas case in point, but our research has uncovered a case from another state that bears directly on the meaning of statutory language that is similar to the prohibition in section 51.13(b) against the use of "evidence adduced in a [juvenile court] hearing." *Gallegos v. Colorado*, 358 P.2d 1028 (Colo. 1960), *rev'd on other grounds*, 370 U.S. 49 (1962), was a murder conviction appeal in which the Supreme Court of Colorado dealt with the contention that a similar statute, prohibiting the use of "any evidence given in any such [juvenile court] case,"[5] barred the use of certain evidence for the reason that the same evidence had been offered in a juvenile delinquency proceeding against the defendant. *Id.* at 1032. In that case the defendant challenged the trial court's admission into evidence of the prosecutor's reading of portions of a stenographically transcribed oral statement that the defendant had made while he was in custody at a police station and that he had signed later, when he was taken to juvenile hall. *Id.* at 1030. In the statement the defendant confessed that he had attacked and robbed the decedent. *Id.* at 1031. The statement also included a written certification, above the defendant's signature, that the "statement is entirely true." *Id.* Before the decedent died, the defendant had been adjudicated delinquent for the robbery of the decedent "and [had been] sentenced to the Industrial School." *Id.* It was undisputed that the statement had been offered in evidence in the defendant's delinquency proceeding in the juvenile court. *Id.* at 1032.

The supreme court disagreed with defense counsel's contention on appeal that the reading of the statement into the record was barred by the Colorado statute merely because the statement had "formed the basis of testimony considered in the juvenile court." *Id.* The supreme court explained its disagreement as follows:

> Contrary to the contention of counsel we hold the statute to mean that a transcript of the testimony given by any witness, including the defendant, in a proceeding before the juvenile court cannot be used in any manner in a subsequent action against the child

---

[5]The court quoted the pertinent part of the Colorado statute, Colo. Rev. Stat. § 22-8-1(3) (1953), as follows:

> A disposition of any child under this article, or any evidence given in any such case, shall not in any criminal or other cause or proceeding whatever be lawful or proper evidence against such child for any purpose excepting in subsequent cases against the child under this article.

*Gallegos v. Colorado*, 358 P. 2d 1028, 1032 (Colo. 1960).

alleged to be a delinquent in the juvenile proceeding. Nor can any evidence be admitted as to what a witness said in the juvenile court hearing. There is nothing in the statute to prevent the district attorney from establishing the same facts by the same witnesses and by the same real and documentary evidence that may have been used in the earlier proceeding in the juvenile court. It is only the evidence *as introduced at the hearing in the juvenile court* which cannot be used against said child in subsequent court proceedings. Ex parte Walter, 92 Okl.Cr. 1, 221 P.2d 659.

The reasons for the statute are well stated in Commonwealth ex rel. Hendrickson v. Myers, 393 Pa. 224, 144 A.2d 367, and in Volume 3, Wigmore on Evidence, section 1040. As there stated, these reasons are consistent with the interpretation we give the statute and inconsistent with the contention of counsel for defendant. It is not the purpose of the statute to foreclose from all future revelation the facts relating to conduct which formed the basis of a prior delinquency proceeding in the juvenile court. When oral testimony is offered for its intrinsic value with relation to the issue to be tried--rather than to establish what was said or done in proceedings before the juvenile court--the statute does not prevent the giving of testimony because the same witness was previously called upon to give evidence relating to the same transaction in juvenile court proceedings. For a comparable example involving the federal rule which prevents disclosure of proceedings before a grand jury, see United States v. Interstate Dress Carriers, Inc., 2 Cir., 280 F.2d 52.

*Id.* at 1032-33.

Although the Texas courts have not decided this question, we believe it is likely that the courts would find the holding and reasoning of the *Gallegos* case to be persuasive. We doubt that a court would read section 51.13(b) so broadly as to bar evidence that is essential to a victim's claim for civil damages merely because the same evidence was offered in juvenile court. Such a broad construction would go beyond the rehabilitative purpose of code title 3; it would tend to excuse a person from civil accountability for injurious conduct. We believe the courts would interpret section 51.13(b) as not prohibiting the use of juvenile-proceeding evidence in another case when the evidence is directly relevant to a material issue in the case and the evidence is not offered "to establish what was said or done in proceedings before the juvenile court." *Id.* at 1033.

Thus, a transcript of juvenile court testimony would be inadmissible because it would show what was said in the juvenile court proceeding. *Id.* at 1032. *But cf. Daniels*

*v. National Fire Ins. Co.*, 394 So. 2d at 683 n.1 (quoting statute as providing that "juvenile case records shall be confidential"), 684 (extract from juvenile court hearing transcript would be admissible). Likewise, language or markings on documentary or real evidence tending to show that the evidence had been adduced in a juvenile case would be inadmissible. On the other hand, the recollection of a witness, or real or documentary evidence that does not tend to show that a person was the subject of a juvenile court proceeding, would not be barred merely because the witness had testified about the same facts or the same real or documentary evidence had been offered in a juvenile case.[6]  *Cf. Missouri v. Owens*, 582 S.W.2d 366, 376 (Mo. Ct. App. 1973) (citing *Gallegos* as support for holding that Missouri statute precluding "all evidence given in [juvenile] cases" from being used in subsequent criminal or other proceedings did not prevent prosecutor from using witnesses in State's case who had testified earlier at juvenile waiver hearing on same subject matter).

Furthermore, it is not sufficient to its admissibility that the juvenile court record will not tend "to establish what was said or done in proceedings before the juvenile court," *Gallegos v. Colorado*, 358 P.2d at 1033. In addition, the record must be offered as proof of a relevant and material issue, that is, "for its intrinsic value with relation to the issue to be tried," *id.*, and not solely for the purpose of impeaching the subject of the juvenile court proceeding. Various Texas cases support this interpretation of the provision. For example, in *Hall v. State*, 745 S.W.2d 579 (Tex. App.--Fort Worth 1988, pet. ref'd), the court concluded that section 51.13(b) did not prohibit the State's cross-examination of a witness in a trial for attempted murder regarding the fact of her release from reform school earlier on the day of the shooting in question, where the evidence was relevant to material issues, namely, the motive for the shooting and the underlying cause of the argument leading up to the shooting. *Id.* at 586. The court warned, however, "that the admission of a juvenile record or evidence of events occurring subsequent to a juvenile hearing would be improper, if the State was attempting to use the evidence to try to impeach the credibility of a juvenile witness." *Id.* at 583; *accord Robinson v. State*, 7 S.W.2d 571, 574 (Tex. Crim. App. 1928) (on motion for rehearing). The court in *Rivas v. State* noted that "it has been held that a juvenile delinquency record may not be used for impeachment of a witness because a provision of the Juvenile Act prohibits the introduction of such evidence." 501 S.W.2d at 920 (citing *Robinson v. State*, 7 S.W.2d 571, and *Smith v. State*, 18 S.W.2d 1070). Similarly, the court in *Carmona v. State* cited section 51.13 for proposition that "[a] juvenile's record is ordinarily inadmissible for impeachment purposes." 670 S.W.2d at 698; *cf.* 3A JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1040, at 1051-52 & n.11 (James H. Chadbourn rev. 1970) (result of

---

[6]We reiterate, however, that a juvenile court may have discretion under section 51.14(a)(4) to deny a copy of evidence adduced in a juvenile court proceeding--even when the evidence is relevant to a material issue in a related civil action and would not be used to show what happened in the juvenile court--if evidence of the same facts is adducible in the related civil action through the testimony of an available witness or is otherwise reasonably available. *See State Farm*, 529 So. 2d at 977.

usual combination in various states' juvenile court statutes of language forbidding use of juvenile court conviction in other proceedings with language forbidding use of "any evidence" given in juvenile court in other proceedings is "to forbid the discrediting of the party's testimony in any later proceeding by comparing it with the same person's testimony in the juvenile court"); *see also* Tex. R. Civ. Evid. 609 ("[e]vidence of juvenile adjudications is not admissible" to impeach a witness's credibility). *But see Davis v. Alaska*, 415 U.S. 319, 317-18 (1974) (criminal defendant has constitutional right, under Confrontation Clause of Sixth Amendment, to attempt to show bias of witness based on evidence that witness was on probation following adjudication of delinquency, notwithstanding state statute prohibiting use of juvenile court evidence in other court proceedings).

Finally, you ask whether "there is a vehicle which would permit the Juvenile Court to limit the use of [court file] documents for a specific purpose so as to address the right of both parties, at least to a limited degree." You do not suggest the "vehicle" that you wish us to consider. We believe, however, that section 51.14(a)(4), in granting the juvenile court discretionary control over the granting of leave to inspect documents, implicitly authorizes that court to impose limitations on such leave that will be consistent with the purposes of code title 3.[7] We also note that Texas Rule of Civil Procedure 76a may provide a vehicle for obtaining an order to seal the evidence in the separate civil proceeding.

## S U M M A R Y

In some circumstances the public policy in favor of compensating property owners for the malicious destruction of their property may justify a juvenile court's determination that a victim of vandalism seeking access to court files and records under section 51.14(a)(4) of the Family Code for use in a civil action for damages caused by the vandalism is a "person . . . having a legitimate interest" in a proceeding adjudicating a child to have engaged in delinquent conduct or conduct indicating a need for supervision.

---

[7]The court in *Hickey v. Eighth Judicial District Court*, 782 P.2d 1336, noted with approval certain limitations in the juvenile court's order granting the request for inspection: (1) a specification that the district judge presiding over the negligence suit would have to review the juvenile court records *in camera* and determine which ones were relevant to the lawsuit, (2) a provision that the records would be used only in the district court proceeding, and (3) a reservation of subsequent decision on the part of the district court concerning the extent to which the material would be allowed to become a part of the record. *Id.* at 1337, 1339. The court concluded in light of these conditions that "the [lower] court entered an order that was narrowly tailored to safeguard society's interests in the confidentiality of Chris' juvenile records, while preserving [the administrator's] right to access information that is relevant to her cause of action below." *Id.* at 1339.

The provision in section 51.14(a) that the "files and records of a juvenile court ... are open to inspection only by [the persons and entities set forth in subsection (a)]" means that only those persons and entities may inspect juvenile files and records, not that those persons and entities may only inspect juvenile files and records. A grant of access to records under section 51.14(a)(4) does not include permission to copy the records unless the public interest requires that the requestor have copies.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James B. Pinson
Assistant Attorney General