112 P.3d 1070 (2005)
The STATE of Nevada, Petitioner,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, in and for the COUNTY OF CLARK, and the Honorable Michael Cherry, District Judge, Respondents, and
David Robert Riker, Real Party in Interest.
No. 44108.
Supreme Court of Nevada.
June 9, 2005.
*1071 Brian Sandoval, Attorney General, Carson City; David J. Roger, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County, for Petitioner.
Franny A. Forsman, Federal Public Defender, and Michael L. Pescetta, Assistant Federal Public Defender, Las Vegas, for Real Party in Interest.
Before the Court en Banc.[1]

OPINION
PER CURIAM.
This is an original petition by the State for a writ of prohibition or mandamus. The underlying proceeding in the district court involves an untimely and successive post-conviction habeas petition filed by David Robert Riker, the real party in interest here. The State contends that the claims raised in Riker's petition are procedurally barred and the district court abused its discretion or exceeded its jurisdiction in ordering an evidentiary hearing on the merits of the claims. The State seeks a writ ordering the district court to vacate its order and to dismiss Riker's habeas petition as procedurally barred.
For the last year and a half this court has been burdened with an increasing number of petitions by the State seeking our extraordinary intervention in post-conviction habeas proceedings. These petitions ask this court to compel district courts to impose procedural bars against post-conviction habeas claims. We have granted relief in some of these *1072 cases, and we determine that some relief is appropriate here. However, we emphasize that mandamus or prohibition is an extraordinary remedy, not a means for routine correction of error, and accordingly set forth some guidance on the narrow circumstances under which that remedy may be appropriate regarding post-conviction procedural bars. We also address some claims that Riker makes in attacking this court's general application of post-conviction procedural default rules.

FACTS
In 1992, Riker and Richard Allan Walker were charged with murder and robbery, both with the use of a deadly weapon, in the stabbing death of Kevin Marble in Las Vegas.[2]
Riker initially entered a plea of not guilty. In November 1992, Riker told his attorney that he wanted to plead guilty to both charges. Four doctors of psychology or psychiatry evaluated Riker to determine his competency. All concluded that he was able to assist his counsel, though one believed that Riker's depression rendered him incapable of rationally entering a guilty plea. In August 1993, the district court thoroughly canvassed Riker regarding his desire to plead guilty and then accepted Riker's guilty plea. In September 1993, Riker underwent another psychological evaluation. The examining doctor concluded that Riker wanted to commit suicide but was competent to aid and consult with his attorney. Later that month, Riker moved to withdraw his guilty plea. The district court denied the motion.
In February 1994, a three-judge panel conducted a penalty hearing. The panel found one aggravating circumstance: the murder occurred during the commission of a robbery, and Riker killed the victim. The panel found two mitigating circumstances: Riker was only 20 at the time of the murder, and he had a history of mental disturbance. The three judges decided that the aggravating circumstance outweighed the mitigating circumstances and returned a death sentence. This court affirmed Riker's judgment of conviction and sentence in November 1995.[3]
In the meantime, Walker went to trial, and in June 1994 a jury convicted him of first-degree murder with use of a deadly weapon and robbery with use of a deadly weapon. He received two consecutive sentences of life without the possibility of parole.[4]
Riker filed a post-conviction petition for a writ of habeas corpus in November 1996. The district court filed an order denying the petition in January 1998, and this court dismissed Riker's appeal in December 1998. Riker filed a habeas petition with the federal district court in October 1999. That court stayed the proceedings to allow Riker to exhaust all of his claims in state court.
Riker filed a second post-conviction habeas petition in state court in March 2003, alleging 23 grounds for relief. The State moved to dismiss the petition, arguing that it was barred procedurally. Riker filed an opposition to the State's motion with over 800 pages of exhibits in support. He contended that the procedural rules could not be applied against him "due to the discretionary and arbitrary application of those rules." In January 2004, Riker filed a motion for leave to conduct discovery accompanied by nearly 1400 pages of exhibits. The exhibits included 47 subpoenas, 55 letters requesting discovery, and 65 other documents. The State filed an opposition to the discovery motion.
In June 2004, Riker filed an amended habeas petition of more than 220 pages, raising 30 more claims for relief. Accompanying the amended petition were more than 1000 pages of exhibits. In addition, more than two dozen exhibits were filed under seal. The same day, Riker also filed a motion seeking a protective order which would keep under seal his responses to discovery requests by the State. He wanted the order to apply to materials allegedly protected by the attorney-client privilege or work-product doctrine and to stay in effect as long as his murder *1073 trial in California was pending.[5] The State filed an opposition to Riker's motion and moved to strike his amended petition.
The district court held a hearing on the various pending matters in August 2004 and decided to grant an evidentiary hearing:
Well I've read everything and to me, I'm going to certainly allow an evidentiary hearing. I think it's only right at this stage as the  now the equivalent of being the trial judge now on this case, it's back to me. I want to make as complete a record as possible in the District Court. Reason being, is I know where this is going to go. It's a death penalty case. It's going to go to the Supreme Court. I don't want them to remand it to me if they affirm  if I deny the post-conviction relief after all the hearing and everything and then it's affirmed by the Supreme Court. It's going to go into Federal Court. I don't want to see it again. I mean that's why I want  maybe it's selfish on my part, but I want to get as much done here so that I'm through with it.
And the only way to do that is to allow the Federal Public Defender to pursue the post-conviction relief on the basis of ineffective assistance of counsel.
Later in the hearing the following exchange occurred among counsel for the State, the district court, and Riker's counsel.
Mr. Owens: On the ordering of an evidentiary hearing, you're aware that on the first Petition for Post-Conviction an evidentiary hearing was denied and that was upheld on appeal. It seems to me we're taking a step back. If it was denied earlier, why would we now want to grant some several years later 
The Court: Because it's a different judge. I view the death penalty case much differently than some of my other jurists. I know that's just the chance you guys take when you come to this department. I'm the one who had a guy get death two weeks ago. And I know what it's like. So I mean I sentenced a guy to death and he got death.
Mr. Pescetta: I would say, your Honor, you know rather than simply rely on that, that there is an enormous amount of material outside the record on appeal that is before this court now that wasn't in the first Habeas Corpus Petition and so whatever record the Nevada Supreme Court upheld the denial of an evidentiary hearing on in the first proceeding, the facts are wholly different at this point in the record before your Honor.
The Court: Well not only that, I  just my own experience in this, with two people, two of my former clients on death row. . . . I know how important it is that a proper record be made in the trial court. And that's what I'm trying to do. I just want to make a proper record. If I've expanded it a little bit, I don't think it's going to hurt because when we go into Federal Court on this, and you guys are going to go into Federal Court, there's no doubt, and Mr. Pescetta's not going to let this stop at the Supreme Court. And even if I deny it and the Supreme Court affirms my denial, it's going to go into the Federal District Court. And I want to make sure that I'm finished with it. That I've exhausted... whatever State remedies there are and that there's a full record. So there's no remand back to Judge Cherry to conduct further evidentiary hearings. So I'll give you that opportunity.
In a written order entered on September 29, 2004, the court denied the State's motions to dismiss the habeas petition and to strike the amended petition, granted Riker's motions for a protective order and for leave to conduct discovery, and granted an evidentiary hearing on Riker's claims of ineffective assistance of post-conviction counsel.

DISCUSSION

Post-conviction procedural default rules and extraordinary intervention by this court
The State contends that the district court abused its discretion or acted in excess of its jurisdiction in three ways: in ordering an evidentiary hearing to review issues on the *1074 merits even though numerous procedural defaults exist and no good cause has been shown to excuse those defaults; in allowing Riker to conduct discovery to explore issues that should have been dismissed; and in granting Riker a protective order allowing him to keep claims for relief and exhibits under seal for an indefinite period of time. The State asks this court to issue a writ of prohibition or mandamus to the district court ordering that court to vacate its order of September 29, 2004, and dismiss Riker's second post-conviction habeas petition as procedurally barred. We conclude that the operative question is whether Riker's claims are procedurally barred and that the district court abused its discretion in not considering the applicable procedural default rules to decide this question. Therefore, we grant the State's petition in part and direct the district court to consider and apply the appropriate rules and decide whether Riker's claims are procedurally barred.

Pertinent legal standards
This court may issue a writ of mandamus to compel the performance of an act which the law requires as a duty resulting from an office, trust, or station or to control a manifest abuse of or arbitrary or capricious exercise of discretion.[6] We may issue a writ of prohibition to arrest the proceedings of any tribunal exercising judicial functions in excess of its jurisdiction.[7] Neither writ issues where the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law.[8] This court considers whether judicial economy and sound judicial administration militate for or against issuing either writ.[9] Mandamus and prohibition are extraordinary remedies, and the decision to entertain a petition lies within the discretion of this court.[10] The purpose of neither writ is simply to correct errors.[11]
Application of the statutory procedural default rules to post-conviction habeas petitions is mandatory.[12] "Habeas corpus petitions that are filed many years after conviction are an unreasonable burden on the criminal justice system. The necessity for a workable system dictates that there must exist a time when a criminal conviction is final."[13]
The procedural rules pertinent to this case appear to be the following. NRS 34.726(1) provides in part that absent a showing of good cause for delay, a petition challenging the validity of a judgment or sentence must be filed within one year after this court issues its remittitur on direct appeal.[14] Riker filed his instant petition almost 8½ years after this court decided his direct appeal. To show good cause for the delay, he must demonstrate that it was not his fault and that dismissal of the petition will unduly prejudice him.[15]
NRS 34.810(1)(a) provides that a post-conviction habeas petition must be dismissed if "[t]he petitioner's conviction was upon a plea of guilty and the petition is not based upon an allegation that the plea was involuntarily or unknowingly entered or that the plea was entered without effective assistance of counsel." NRS 34.810(2) provides that a second or successive petition must be *1075 dismissed if "it fails to allege new or different grounds for relief and ... the prior determination was on the merits or, if new and different grounds are alleged, . . . the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." To avoid dismissal, Riker must plead and prove specific facts that demonstrate good cause for his failure to present claims before or for presenting claims again and actual prejudice.[16] He cannot rely on conclusory claims for relief but must provide supporting specific factual allegations that if true would entitle him to relief.[17] And he is not entitled to an evidentiary hearing if the record belies or repels the allegations.[18]
To show good cause, Riker must demonstrate that an impediment external to the defense prevented him from complying with procedural rules.[19] Actual prejudice requires him to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[20] Absent a showing of good cause to excuse procedural default, the court will consider a claim only if the petitioner demonstrates that failure to consider it will result in a fundamental miscarriage of justice.[21]
Furthermore, the law of a prior appeal is the law of the case in later proceedings in which the facts are substantially the same; this doctrine cannot be avoided by more detailed and precisely focused argument.[22]
Finally, NRS 34.800(1) provides that a court may dismiss a petition if delay in its filing either prejudices the State "in responding to the petition, unless the petitioner shows that the petition is based upon grounds of which he could not have had knowledge by the exercise of reasonable diligence" before the prejudice arose, or prejudices the State "in its ability to conduct a retrial of the petitioner, unless the petitioner demonstrates that a fundamental miscarriage of justice has occurred." If the pertinent period of delay exceeds five years, as in this case, it leads to "a rebuttable presumption of prejudice to the State."[23]

The narrow circumstances in which extraordinary intervention is appropriate; the relief appropriate in this case
We begin our analysis by stressing that extraordinary relief is not warranted for routine correction of errors that a district court may make. Such relief is not in order, for example, where a district court has considered the applicable procedural default rules, applied them to a post-conviction habeas petition, and concluded that claims are not procedurally barred. That the State, or even this court, might disagree with the district court's conclusion is not a reason to seek extraordinary relief as long as the district court has made a reasonable effort to follow the applicable law regarding procedural default. Even if a district court errs, consistent application of procedural default rules in this state can be maintained by our review of the matter on appeal from the district court's final resolution of a petition.
However, the statutory rules regarding procedural default are mandatory and cannot be ignored when properly raised by the State. Therefore, in a case where it is clear that the district court has disregarded the applicable law and failed to decide the issue of procedural default or decided the issue by applying clearly incorrect legal standards, *1076 extraordinary relief is likely warranted. In this case, the district court disregarded the applicable law and invoked incorrect standards in rejecting the State's assertions of procedural default. But we do not ourselves decide the question of procedural default, as the State requests; rather, we direct the district court to assess the record and Riker's specific claims, consider and apply the appropriate rules of procedural default, and decide in a written order whether claims are procedurally barred.
Given the untimely and successive nature of Riker's petition, the district court had a duty imposed by law to consider whether any or all of Riker's claims were barred under NRS 34.726, NRS 34.810, NRS 34.800, or the law of the case previously pronounced by this court. The district court, however, did not refer to or apply these legal standards in granting the evidentiary hearing. It cited concerns which, while understandable, are not controlling. The district court considered itself the "equivalent of ... the trial judge" and consequently wanted "to make as complete a record as possible." This is an incorrect basis for an evidentiary hearing. Once a defendant has pleaded guilty, as long as the validity of the plea is recognized, he is not entitled to a trial or a hearing comparable in scope to a trial.[24] The district court also repeatedly expressed the aim of thoroughly considering and deciding Riker's case in order not to see it again. Though an appropriate goal in regard to cognizable issues, this consideration does not nullify procedural default rules. The district court stated further that an evidentiary hearing would be granted because it was "a different judge" and "view[ed] the death penalty case much differently than some of my other jurists. I know that's just the chance you guys take when you come to this department." Again, although serious and careful consideration of death penalty cases is always required, the fact that a habeas petitioner faces a death sentence does not somehow lessen the effect of procedural bars. Nor should the temperament and particular concerns of a district judge determine whether the bars will be given effect.
None of the factors discussed by the district court permitted it to disregard the question of the applicability of the procedural default rules. We conclude that mandamus relief is appropriate here because determining whether procedural bars apply to an untimely or successive habeas petition is an act which the law requires of the district court and that court's failure to make this determination here constituted an arbitrary and unreasonable exercise of discretion. Also, the State has no plain, speedy, and adequate remedy in the ordinary course of law for this abuse of discretion. Particularly in this case where the claims are so numerous and the requests for discovery so extensive, judicial economy and sound judicial administration militate for granting relief: determining the applicability of procedural bars may eliminate the need for or narrow the scope of any discovery or evidentiary hearing.

Criticism of this court's general application of procedural default rules
We are returning this matter to the district court for it to assess the record, to determine the pertinent facts, and to decide the applicability of the procedural default rules to Riker's specific claims. But in his answer, Riker presents certain issues that extend beyond the facts of this case and raise questions of law which are appropriate for our resolution.[25]
*1077 First, Riker asserts that his first post-conviction habeas counsel was appointed to represent him pursuant to statutory mandate and that this gave him the right to effective assistance by that counsel. He therefore concludes that under Crump v. Warden[26] his claims that his first post-conviction counsel was ineffective conclusively establish cause for this second post-conviction petition. This overstates the holding in Crump, where we concluded that such claims were not subject to procedural default under NRS 34.810(1)(b) for failure to raise them in prior proceedings.[27]Crump does not stand for the proposition that claims of ineffective first post-conviction counsel are immune to other procedural default, e.g., untimeliness under NRS 34.726 or NRS 34.800. As we have explained elsewhere,
A claim of ineffective assistance of counsel may also excuse a procedural default if counsel was so ineffective as to violate the Sixth Amendment. However, in order to constitute adequate cause, the ineffective assistance of counsel claim itself must not be procedurally defaulted. In other words, a petitioner must demonstrate cause for raising the ineffective assistance of counsel claim in an untimely fashion.[28]
Riker also argues that procedural default rules cannot be applied to his case because in other cases this court has disregarded the bars or has applied them inconsistently. We accept neither Riker's premise that we regularly disregard the bars nor his conclusion that disregard or inconsistency on our part would excuse his own procedural default. First, any prior inconsistent application of statutory default rules would not provide a basis for this court to ignore the rules, which are mandatory, as we explained in Pellegrini v. State.[29] Second, we flatly reject the claim that this court at its discretion ignores procedural default rules.[30] Riker offers a number of flawed, misleading, and irrelevant arguments to back his position that this court "has exercised complete discretion to address constitutional claims, when an adequate record is presented to resolve them, at any stage of the proceedings, despite the default rules contained in [NRS] 34.726, 34.800, and 34.810."
To begin with, Riker criticizes this court's consideration of unpreserved error on direct appeal and equates such consideration with a failure to respect procedural bars in post-conviction proceedings. This equation is utterly without merit. Unpreserved error on direct appeal is not subject to procedural bars or anything equivalent to such bars; on the contrary, statutes grant this court the discretion to consider unpreserved errors or even require the court, in some cases, to consider such errors. NRS 178.602 expressly provides this court with the discretion on direct appeal to consider plain error despite a failure to preserve the issue at trial or to raise the issue on appeal.[31] As we have explained before, this plain-error rule applies only on direct appeal and "does not create a procedural bar exception in any habeas proceeding."[32] Furthermore, in direct appeals of death sentences, NRS 177.055(2) specifically requires this court to review on the record, among other things, "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor."
Thus, when Riker cites Butler v. State,[33] a recent direct appeal where this court applied NRS 177.055(2), he is wrong that the decision has any bearing on the consistency of our application of post-conviction procedural default rules, and he is wrong that it involved this court's exercise of unwarranted discretion. *1078 Butler and this court's other dispositions on direct appeal cited by Riker are of absolutely no relevance to the issue of consistent application of post-conviction procedural bars.[34] Similarly irrelevant is Riker's criticism of this court's treatment of jurisdictional challenges.[35] Nor is Riker's position supported by this court's occasional use of standard footnotes stating that no relief is warranted based on proper person submissions.[36]
Riker also mischaracterizes many of our decisions in an effort to defend the ruling below. For example, he contends that we ignored procedural bars in Bennett v. State, from which he quotes the following: "[w]ithout expressly addressing the remaining procedural bases for the dismissal of Bennett's petition, we therefore choose to reach the merits of Bennett's contentions."[37] The full context of this quoted material demonstrates that we did not ignore the procedural bars but addressed Bennett's claims within the framework of those bars:
Although there appears to be merit to the State's insistence that Bennett has not demonstrated good cause for failing to raise certain issues in prior proceedings and for revisiting issues that have already been decided by this court, whether Bennett can show cause for doing so is related to his ineffective assistance of counsel allegations. Furthermore, whether Bennett can show prejudice from the dismissal of his petition is intricately related to the merits of his claims. Without expressly addressing the remaining procedural bases for the dismissal of Bennett's petition, we therefore choose to reach the merits of Bennett's contentions, which are clearly lacking for the most part and, in terms of those allegations of arguable merit, do not otherwise warrant a new penalty hearing.[38]
According to Riker, in Ford v. Warden[39] we addressed a claim of direct appeal "error" raised for the first time in a second post-conviction proceeding without discussing or applying default rules. Actually, in that case we noted Ford's request that we revisit the evidence in her case and modify her sentence, but we "perceive[d] no basis for reconsidering our previous holding" and declined to do so.[40] Our denial of Ford's request simply upheld the law of the case and in no way infringed any procedural bars.
In a 15-page order in Jones v. Warden,[41] we ruled that the claims in a successive post-conviction habeas petition were procedurally barred. In the final paragraph of the order, we rejected Jones's challenges to his three-judge sentencing procedure, including one under Ring v. Arizona.[42] We stated that "[e]ven assuming Ring's recent date provides appellant with good cause for failing to raise it in an earlier proceeding, we conclude that appellant suffered no prejudice"; we then concluded that "appellant's other grounds for challenging the three-judge sentencing panel are meritless."[43] Based on *1079 this final sentence, Riker concludes that we ignored applicable procedural bars. This conclusion is unjustified. In the context of our application of the procedural bars throughout the order, "meritless" indicated the appellant's failure to show prejudice and did not signify that we abruptly chose to dispense with the procedural bars and decide these final claims directly on the merits. The same essential analysis applies to Bejarano v. Warden,[44] and Riker's characterization of that opinion as disregarding procedural default rules is also incorrect.
Riker maintains that a number of other decisions by this court support his position that we apply procedural default rules inconsistently, but under scrutiny the support fails to materialize. He cites several of our orders that dismissed appeals after applying the doctrine of the law of the case, which is compatible with the statutory procedural bars, not inconsistent with them as Riker appears to suggest.[45] Even more puzzling, Riker cites as instances of inconsistency dispositions in which we have expressly enforced statutory procedural bars and denied relief.[46] Apparently, he reasons that in denying relief to a petitioner on the basis of one procedural bar without discussing the possible application of another procedural bar, this court has asserted discretion to disregard the procedural bars. He does not make this reasoning explicit, nor does he offer any authority for it. It is, of course, a frivolous claim. A court need not discuss or decide every potential basis for its decision as long as one ground sufficient for the decision exists.[47] This proposition is fundamental to legal analysis and judicial economy, as well as simple logic. Thus, our conclusion in a case that one procedural bar precludes relief carries no implication regarding the potential applicability of other procedural bars.
Riker contends that our order in O'Neill v. State[48] flouts NRS 34.800(2) by not addressing laches and the presumption of prejudice to the State set forth in that statute. However, that statute requires the State to specifically plead laches and prejudice. Nor is it likely such a pleading would have gained relief given our determination that O'Neill had established cause and prejudice under NRS 34.726 for the untimely filing of his petition.
Riker's contentions regarding several other of our decisions are also incorrect. He asserts that in Farmer v. Director[49] we addressed the merits of two claims even though they were not raised on direct appeal: whether the guilty plea was involuntary and whether the aggravating circumstances were *1080 insufficient. But these questions were not procedurally barred. The voluntariness of a guilty plea is an appropriate claim in a first post-conviction habeas petition, and the challenge to the aggravating circumstances was a basis for a claim of ineffective assistance of counsel, also appropriately raised.[50] Riker asserts that in Farmer v. State[51] we addressed a claim of improper admission of victim impact evidence on the merits despite procedural default. He is incorrect. Farmer claimed ineffective assistance of counsel, and we concluded that he failed to demonstrate prejudice. The claim was appropriately raised because a statute mandated appointment of counsel for Farmer in his first post-conviction petition in 1986.[52] Riker also criticizes this court for not requiring the petitioner to file another petition and plead cause in Feazell v. State, but we did not disregard procedural default in that case; rather, we expressly addressed the issue, applying NRS 34.810(1)(b)(3) and concluding that cause existed and prejudice resulted.[53] And the claim we addressed in denying rehearing in Nevius v. Warden[54] was not procedurally barred because it arose only after the original habeas petition was filed. Although the claim should not have been raised for the first time on rehearing, we considered it in the interest of judicial economy and rejected it.
Riker also cites decisions by this court dating to the 1970s and even earlier. Such early decisions are irrelevant to the question of consistent application of the procedural bars because, as we explained in Pellegrini, the pertinent statutory law (and our own caselaw concerning the treatment of ineffective assistance of counsel) evolved over the years and did not establish the current rigorous, comprehensive procedural bars until the mid-1980s.[55]
Riker claims that this court has issued contradictory decisions as to whether a petitioner can demonstrate cause to excuse a procedural default. He asserts generally that this court's decision-making is inconsistent in various cases in various ways, but he fails to deal with the specific facts of those cases and the distinctions in our rulings. For example, he states that in State v. Haberstroh[56] this court construed a stipulation in a post-conviction habeas proceeding as establishing cause under the procedural default rules. He claims that we acted inconsistently in Sullivan v. State,[57] refusing to recognize cause despite the parties' stipulation that a habeas petition was timely. The cases, however, are readily distinguishable. Haberstroh involved a successive habeas petition, and the parties stipulated to allow resolution of some of the issues on the merits.[58] We held that parties in a post-conviction habeas proceeding cannot stipulate to disregard the procedural default rules, but we realized that Haberstroh had in good faith "relied upon the stipulation and did not present evidence or argument in regard to cause for raising his claims."[59] In order to decide the appeal while still complying with the relevant procedural bars, we treated the stipulation "as establishing the facts to show cause to raise the relevant claims but allowing consideration of the claims' merits only to *1081 determine the question of prejudice."[60] The basis for our approach was the recognition that "[p]arties can stipulate to the facts but not to the law."[61] The stipulation in Sullivan ran afoul of this same proposition. In that case, we concluded that the parties' stipulationthat a supplemental habeas petition was timely simply because it was filed within one year of the entry of an amended judgment of convictionwas incorrect as a matter of law.[62] "[T]he one-year statutory time limit did not automatically restart for Sullivan's post-conviction claims simply because the district court entered the amended judgment of conviction."[63] Since Sullivan's "claims were not related to and did not contest the clerical correction contained in the amended judgment of conviction," entry of the amended judgment did not provide good cause to excuse the untimely filing of his petition.[64] There is no conflict between this holding and Haberstroh.[65]
Riker also suggests that this court's determination in Stevens v. State,[66] that Stevens had established cause for filing an untimely petition, contradicts Crump v. Warden.[67] However, our order in Stevens in no way conflicts with our opinion in Crump. We concluded that Stevens should have been appointed counsel in his first petition and that "under the extremely unusual circumstances presented in this case," good cause existed for his failure to file a timely second habeas petition.[68] We recognized that appointment of counsel was not automatic under the pertinent statute but concluded, among other things, that the district court had erred by failing to consider Stevens's request for counsel "given that Stevens was under a penalty of death and had alleged an arguably colorable ineffective assistance of counsel claim in his first petition."[69] In Crump we held simply that "a petitioner who has counsel appointed by statutory mandate is entitled to effective assistance of that counsel."[70]Crump does not mean, as Riker apparently assumes, that without such a mandate a court's failure to appoint counsel cannot provide good cause for procedural default.
We end with Riker's reliance on caselaw that after our 2001 decision in Pellegrini clearly lacks the authority attributed to it. The answer filed on Riker's behalf cites our decision in Hill v. State[71] as an instance of our ignoring procedural bars, but in Pellegrini we discussed the facts underlying Hill and explained that it did not offend the procedural default rules because the district court improperly had failed to appoint counsel for Hill in dismissing his first post-conviction petition.[72] Riker's answer simply ignores Pellegrini's discussion of Hill. Even more troubling, it cites our 1974 decision in Warden v. Lischko[73] for the proposition that a *1082 district court has the discretionary power to rule on a barred claim. Yet in Pellegrini we not only explained that the procedural bar for waiver in 1974 was far less stringent than the current bar; we expressly overruled Lischko in regard to the proposition for which the answer cites it.[74]

CONCLUSION
We grant the State's petition in part and direct the clerk of this court to issue a writ of mandamus that directs the district court to vacate its order of September 29, 2004, which denied the State's motions to dismiss the habeas petition and strike the amended petition, granted Riker's motions for a protective order and leave to conduct discovery, and granted an evidentiary hearing. The writ shall also direct the district court, consistently with this opinion, to assess the record and determine the pertinent facts, consider and apply the appropriate rules of procedural default to Riker's specific claims, and issue a written order that sets forth, with suitable findings and conclusions, which, if any, claims are procedurally barred and which, if any, are not. If the district court concludes that all the claims are barred, it shall issue its order as a final one.[75] If it concludes that any claims are not barred, it shall conduct further proceedings in this matter as appropriate.[76] We hereby also vacate the stay imposed by our order of November 12, 2004.
NOTES
[1] The Honorable Michael L. Douglas, Justice, voluntarily recused himself from participation in the decision of this matter.
[2] Riker v. State, 111 Nev. 1316, 1318, 905 P.2d 706, 707 (1995); Walker v. State, 113 Nev. 853, 858-59, 944 P.2d 762, 765-66 (1997).
[3] Riker, 111 Nev. 1316, 905 P.2d 706.
[4] Walker, 113 Nev. at 858, 944 P.2d at 765-66.
[5] Apparently, Riker and Walker are facing trial for the April 1992 murder of John Phippin in Blythe, California. Cf. Riker, 111 Nev. at 1318, 905 P.2d at 707.
[6] See NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).
[7] See NRS 34.320; Hickey v. District Court, 105 Nev. 729, 731, 782 P.2d 1336, 1338 (1989).
[8] See NRS 34.170; NRS 34.330; Hickey, 105 Nev. at 731, 782 P.2d at 1338.
[9] See State v. Babayan, 106 Nev. 155, 175-76, 787 P.2d 805, 819 (1990).
[10] Hickey, 105 Nev. at 731, 782 P.2d at 1338.
[11] See, e.g., State of Nevada v. Dist. Ct., 116 Nev. 127, 133, 994 P.2d 692, 696 (2000); Goicoechea v. District Court, 96 Nev. 287, 289-90, 607 P.2d 1140, 1141 (1980).
[12] State v. Haberstroh, 119 Nev. 173, 180, 69 P.3d 676, 681 (2003).
[13] Groesbeck v. Warden, 100 Nev. 259, 261, 679 P.2d 1268, 1269 (1984).
[14] See Pellegrini v. State, 117 Nev. 860, 874-75, 34 P.3d 519, 529 (2001). In cases where the petitioner's conviction preceded the enactment of NRS 34.726, the one-year filing period extends from January 1, 1993, the effective date of NRS 34.726. Id.
[15] NRS 34.726(1).
[16] NRS 34.810(3).
[17] Evans v. State, 117 Nev. 609, 621, 28 P.3d 498, 507 (2001).
[18] Id.
[19] See Crump v. Warden, 113 Nev. 293, 302, 934 P.2d 247, 252 (1997).
[20] United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); see also Hogan v. Warden, 109 Nev. 952, 960, 860 P.2d 710, 716 (1993).
[21] See Mazzan v. Warden, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996).
[22] See Hall v. State, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).
[23] NRS 34.800(2).
[24] See NRS 34.810(1) (requiring dismissal of a petition if the petitioner pleaded guilty unless the petition alleges that the plea was involuntary or unknowing or was entered without effective assistance of counsel); Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").
[25] In presenting these issues, Riker refers to a number of this court's unpublished orders. Our unpublished orders do not constitute precedent, and a party cannot cite them as legal authority. See SCR 123 (providing two exceptions not applicable here). In this case, we have considered and discussed these orders not as legal precedent but only to determine if they support factually Riker's allegations.
[26] 113 Nev. at 303-04, 934 P.2d at 253.
[27] Id. at 304-05, 934 P.2d at 254.
[28] Hathaway v. State, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003) (footnotes omitted).
[29] 117 Nev. at 879-80, 34 P.3d at 532.
[30] See id. at 879-86, 34 P.3d at 532-36.
[31] NRS 178.602 provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
[32] Pellegrini, 117 Nev. at 884, 34 P.3d at 535.
[33] 120 Nev. ___, ___, 102 P.3d 71, 85 (2004).
[34] E.g., Lane v. State, 110 Nev. 1156, 881 P.2d 1358 (1994), overruled by Leslie v. Warden, 118 Nev. 773, 59 P.3d 440 (2002); Powell v. State, 108 Nev. 700, 838 P.2d 921 (1992), vacated, 511 U.S. 79, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994); Lord v. State, 107 Nev. 28, 806 P.2d 548 (1991).
[35] Riker's criticism is baseless as well. In Jones v. State, we did not rule that the requirement of subject matter jurisdiction is waivable; rather, we ruled in Jones's first post-conviction proceeding that by pleading guilty he had conceded the facts establishing such jurisdiction. Docket No. 24497, 112 Nev. 1724, 999 P.2d 383 (Order Dismissing Appeal, August 28, 1996). And in a later proceeding, we ruled that the issue of jurisdiction was settled under the doctrine of the law of the case. Jones v. Warden, Docket No. 39091, 118 Nev. 1115, 106 P.3d 1232 (Order of Affirmance, December 19, 2002).
[36] Riker cites specifically Baeta v. State, Docket No. 37524, 117 Nev. 1122, 105 P.3d 753 (Order of Affirmance, November 2, 2001), and Wilson v. State, Docket No. 29802, 114 Nev. 1761, 988 P.2d 880 (Order Dismissing Appeal, April 9, 1998).
[37] 111 Nev. 1099, 1103, 901 P.2d 676, 679 (1995) (emphasis added by Riker).
[38] Id. (emphasis added).
[39] 111 Nev. 872, 901 P.2d 123 (1995).
[40] Id. at 886-87, 901 P.2d at 132.
[41] Docket No. 39091, 118 Nev. 1115, 106 P.3d 1232 (Order of Affirmance, December 19, 2002).
[42] 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[43] Jones, Docket No. 39091, at 14-15 (footnote omitted).
[44] 112 Nev. 1466, 1471 n. 2, 929 P.2d 922, 926 n. 2 (1996).
[45] See, e.g., Williams v. Warden, Docket No. 29084, 113 Nev. 1660, 970 P.2d 1141 (Order Dismissing Appeal, August 29, 1997) (also applying procedural bar to new claims); Rogers v. Warden, Docket No. 22858 (Order Dismissing Appeal, May 28, 1993); Williams v. State, Docket No. 20732, 106 Nev. 1047, 835 P.2d 74 (Order Dismissing Appeal, July 18, 1990).
[46] Milligan v. Warden, Docket No. 37845, 118 Nev. 1127, 106 P.3d 1242 (Order of Affirmance, July 24, 2002); Riley v. State, Docket No. 33750, 115 Nev. 587, 24 P.3d 283 (Order Dismissing Appeal, November 19, 1999); Ybarra v. Warden, Docket No. 32762, 115 Nev. 606, 24 P.3d 304 (Order Dismissing Appeal, July 6, 1999); Wilson v. State, Docket No. 29802, 114 Nev. 1761, 988 P.2d 880 (Order Dismissing Appeal, April 9, 1998); Farmer v. State, Docket No. 29120, 113 Nev. 1622, 970 P.2d 1102 (Order Dismissing Appeal, November 20, 1997); Sechrest v. State, Docket No. 29170, 113 Nev. 1648, 970 P.2d 1129 (Order Dismissing Appeal, November 20, 1997); Nevius v. Warden, Docket Nos. 29027 & 29028, 112 Nev. 1734, 999 P.2d 392 (Order Dismissing Appeal and Denying Petition, October 9, 1996). Riker also cites Koerner v. Grigas, 328 F.3d 1039, 1043-44 (9th Cir.2003), which describes this court's affirmance of a dismissal of a successive petition.
[47] See, e.g., Thomas v. State, 120 Nev. 37, 48, 83 P.3d 818, 825 (2004) ("We need not decide whether this failure [by counsel to challenge improper remarks by the prosecutor] was prejudicial since we have already determined that a new penalty hearing is necessary."); Allan v. State, 118 Nev. 19, 26, 38 P.3d 175, 179 (2002) ("In light of this conclusion [that the district court erroneously ruled that the appellant could be impeached with his confession], we need not reach [appellant's] other contentions.").
[48] Docket No. 39143, 118 Nev. 1132, 106 P.3d 1247 (Order of Reversal and Remand, December 18, 2002).
[49] Docket No. 18052, 104 Nev. 856, 809 P.2d 603 (Order Dismissing Appeal, March 31, 1988).
[50] See NRS 34.810(1)(a); Kirksey v. State, 112 Nev. 980, 999, 923 P.2d 1102, 1114 (1996) ("Where the defendant has pleaded guilty, the only claims that may be raised thereafter are those involving the voluntariness of the plea itself and the effectiveness of counsel.").
[51] Docket No. 22562, 108 Nev. 1233, 872 P.2d 816 (Order Dismissing Appeal, February 20, 1992).
[52] See 1987 Nev. Stat., ch. 539, § 42, at 1230; Crump, 113 Nev. at 303, 934 P.2d at 253 ("[A] petitioner who has counsel appointed by statutory mandate is entitled to effective assistance of that counsel.").
[53] Docket No. 37789, 118 Nev. 1100, 106 P.3d 1219 (Order Affirming in Part and Vacating in Part, November 14, 2002).
[54] Docket Nos. 29027 & 29028 (Order Denying Rehearing, July 17, 1998).
[55] 117 Nev. at 870-72, 883, 886, 34 P.3d at 526-27, 534, 536.
[56] 119 Nev. 173, 69 P.3d 676.
[57] 120 Nev. ___, 96 P.3d 761 (2004).
[58] 119 Nev. at 180, 69 P.3d at 681.
[59] Id. at 181, 69 P.3d at 681.
[60] Id. at 181, 69 P.3d at 681-82 (footnote omitted).
[61] Id. at 181 n. 8, 69 P.3d at 681 n. 8.
[62] Sullivan, 120 Nev. at ___, 96 P.3d at 763-65.
[63] Id. at ___, 96 P.3d at 764.
[64] Id. at ___, 96 P.3d at 765.
[65] Riker also claims that Doleman v. State, Docket No. 33424, 116 Nev. 1368, 62 P.3d 1152 (Order Dismissing Appeal, March 17, 2000), is inconsistent with Haberstroh. Doleman was a direct appeal of an amended judgment of conviction imposing a new sentence. It involved a stipulation allowing Doleman to raise an issue that did not pertain to the amended judgment; in our order, we explained that the issue was not appropriately raised but clarified that we had previously rejected it as lacking merit. To the extent that Doleman bears any resemblance to Haberstroh, there is, again, no conflict.
[66] Docket No. 24138, 110 Nev. 1559, 893 P.2d 422 (Order of Remand, July 8, 1994).
[67] 113 Nev. 293, 934 P.2d 247.
[68] Stevens, Docket No. 24138, at 3.
[69] Id. at 4.
[70] 113 Nev. at 303, 934 P.2d at 253.
[71] 114 Nev. 169, 953 P.2d 1077 (1998).
[72] Pellegrini, 117 Nev. at 885, 34 P.3d at 536. For the same reason, our order disposing of Hill's first post-conviction petition, which Riker cites separately, also does not support Riker's position. Hill v. State, Docket No. 18253, 103 Nev. 806, 809 P.2d 35 (Order Dismissing Appeal, June 29, 1987).
[73] 90 Nev. 221, 523 P.2d 6 (1974), overruled by Pellegrini, 117 Nev. at 886, 34 P.3d at 536. He also cites Krewson v. Warden, 96 Nev. 886, 620 P.2d 859 (1980), which invokes Lischko.
[74] Pellegrini, 117 Nev. at 886, 34 P.3d at 536.
[75] See NRS 34.830.
[76] In his answer to the State's petition, Riker also argues that our recent decision in McConnell v. State, 120 Nev. ___, 102 P.3d 606 (2004), applies, invalidating the one aggravating circumstance found in his case. Because this issue has not been presented to the district court or addressed by the State, we do not consider it here.