# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL JOSEPH MULDER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 69490



FILED

JUL 2 6 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying appellant's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Michael Mulder bound, beat, and murdered 77-year-old John Ahart. He also stole Ahart's gun, watch, jewelry box, and car. A jury convicted Mulder of first-degree murder, robbery of a victim over the age of 65, and burglary while in possession of a firearm and sentenced him to death. This court affirmed the judgment of conviction on appeal. *Mulder v. State*, 116 Nev. 1, 992 P.2d 845 (2000). Mulder unsuccessfully sought relief in a prior postconviction petition for a writ of habeas corpus. *State v. Mulder*, Docket No. 46800 (Order Affirming in Part and Reversing in Part, June 17, 2009). Mulder filed the instant petition in the district court on December 9, 2014. The district court denied the petition as procedurally barred, and this appeal followed.

SUPREME COURT
OF
NEVADA

(O) 1947A

18- 28642

*Procedural bars*

Mulder's petition is subject to several procedural bars. First, the petition was untimely as it was filed more than 14 years after remittitur issued from his direct appeal. *See* NRS 34.726(1). Additionally, the petition was successive because Mulder had previously filed a postconviction petition, and it constituted an abuse of the writ because he raised claims new and different from those raised in his previous petition. *See* NRS 34.810(1)(b), (2). Petitions that are untimely, successive, or that constitute an abuse of the writ are subject to dismissal absent a showing of good cause and actual prejudice. NRS 34.726(1); NRS 34.810(1)(b), (3). To establish good cause, a petitioner must "show that an impediment external to the defense prevented him or her from complying with the state procedural default rules." *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). "An impediment external to the defense may be demonstrated by a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials, made compliance impracticable." *Id.* (internal quotation marks omitted). A petitioner must set forth a valid basis to excuse the procedural bars for an evidentiary hearing to be warranted. *Pellegrini v. State*, 117 Nev. 860, 869, 34 P.3d 519, 525 (2001).

Additionally, the State pleaded laches pursuant to NRS 34.800. Because the petition was filed more than 5 years after the decision on direct appeal, Mulder was required to overcome the presumption of prejudice to the State in responding to the petition and in its ability to retry him. NRS 34.800(2). To overcome the first presumption, Mulder had to "show[ ] that the petition is based upon grounds of which [he] could not have had

 

knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the State occurred." NRS 34.800(1)(a). To overcome the second presumption, Mulder had to "demonstrate[ ] that a fundamental miscarriage of justice has occurred in the proceedings resulting in the judgment of conviction or sentence." NRS 34.800(1)(b).

As good cause to overcome the procedural bars, Mulder contends that his alleged incompetency prevented his claims from being raised earlier, that prior postconviction counsel provided ineffective assistance, that intervening Supreme Court authority provides a new claim for relief, and that the State's failure to disclose material exculpatory and impeachment evidence prevented claims from being raised earlier. Additionally, he argues a fundamental miscarriage of justice will occur should his petition not be considered on the merits.

*Incompetency*

Mulder argues that the factual bases for the claims raised in his second petition were not available when he filed his first postconviction petition due to his stroke and resulting mental deficits. He asserts that first postconviction counsel was unable to elicit any substantive information from him or to have a rational discussion about the issues. He references memory deficits and communication and comprehension difficulties as well as a federal court's determination in 2013 that he was incompetent and unlikely to regain competence in the foreseeable future.

It is not clear that Mulder's stroke, resulting mental deficits and memory and comprehension difficulties provide good cause under Nevada law. *See Phelps v. Director*, 104 Nev. 656, 660, 764 P.2d 1303, 1306 (1988) (holding organic brain damage at birth and borderline intellectual

disability do not establish sufficient cause to overcome procedural bars). Although some courts have suggested that a petitioner's incompetency could constitute good cause if it prevented the petitioner from assisting prior postconviction counsel on a fact-based claim, *see, e.g., Council v. Catoe*, 597 S.E.2d 782, 787 (S.C. 2004), this court has never done so. Even if this court were to follow those courts, Mulder's alleged incompetency would only be relevant to the extent it prevented the factual basis for a claim from being reasonably available to his former postconviction counsel. *See Hathaway*, 119 Nev. at 252, 71 P.3d at 506. Mulder, however, fails to demonstrate his competency was required to develop a specific claim and resulting prejudice or a fundamental miscarriage of justice.[1]

The overwhelming majority of Mulder's claims are based in the record or the law: (1) categorical exclusion from the class of defendants eligible for the death penalty; (2) invalid special verdicts at penalty hearing; (3) invalid harmless-error analysis by this court in the first postconviction appeal; (4) prosecutorial misconduct; (5) errors during voir dire; (6) improper admission of unreliable evidence at penalty hearing; (7) invalid lethal injection procedure in Nevada; (8) invalid jury instructions; (9) unconstitutionality of elected judges; and (10) ineffective assistance of appellate counsel. Thus, any alleged incompetency cannot be good cause because the bases for these claims were available at the time the first petition was filed and did not require Mulder's competency. As to Mulder's

---

[1]We note that this court affirmed a finding that Mulder was competent at the time of his first postconviction proceedings. *State v. Mulder*, Docket No. 46800 (Order Affirming in Part and Reversing in Part, June 17, 2009).

Supreme Court
of
Nevada

(O) 1947A

4

claim of cruel and unusual conditions of confinement, the district court correctly found that this claim is not cognizable in a postconviction petition for a writ of habeas corpus. *Bowen v. Warden*, 100 Nev. 489, 490, 686 P.2d 250, 250 (1984) ("We have repeatedly held that a petition for writ of habeas corpus may challenge the validity of current confinement, but not the conditions thereof."). Disregarding those claims that are record based or are based in the law, only one claim raised in the second petition may have required Mulder's competency to develop a factual basis—that trial counsel were ineffective for failing to investigate and present readily available mitigation evidence, to rebut the State's arguments concerning future dangerousness, and to present evidence of Mulder's positive adjustment in a structured setting as mitigation.

Nevertheless, Mulder does not demonstrate his alleged incompetency provides good cause for the delay in raising the ineffective-assistance-of-trial-counsel claim because he only makes bare and vague allegations regarding what information he could not remember or communicate to first postconviction counsel and what facts or evidence he subsequently was able to obtain. "To avoid dismissal [of a second or successive petition], [a petitioner] *must plead and prove specific facts* that demonstrate good cause for his failure to present claims before . . . ." *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 232, 112 P.3d 1070, 1075 (2005) (emphasis added). Because of the vagueness in his pleading, Mulder does not demonstrate that his alleged incompetency prevented the factual basis of his claim from being developed sooner and consequently that his incompetency provides good cause for the delay in asserting that claim. *See Pellegrini*, 117 Nev. at 890, 34 P.3d at 539 ("Although [petitioner]

SUPREME COURT
OF
NEVADA

(O) 1947A

5

contends that he was incompetent and insane . . . throughout the prior proceedings, the declaration fails to set forth facts to demonstrate how [petitioner's] mental state related to any impediment in asserting the grounds for relief now raised in the second petition."); *see also Moore v. State*, 134 Nev., Adv. Op. 35, 417 P.3d 356, 359 (2018) (explaining that a petitioner who alleges good cause based on newly available facts must identify those facts).

In addition, Mulder fails to demonstrate not only that specific information has come to light that was not previously available due to his incompetency but that he then raised a claim based on that information within a reasonable time of discovering it. *See Hathaway*, 119 Nev. at 252-53, 255, 71 P.3d at 506, 508 (holding that good-cause arguments must be made in a timely fashion). Most of Mulder's claims were raised in a petition he filed in federal court in 2009 and amended in 2010. Thus, any claims that he was able to raise in federal court in 2009 or 2010 would not have been raised within a reasonable time when he filed his second state petition in 2014.

Mulder also fails to demonstrate actual prejudice. He argues that first postconviction counsel could have successfully litigated a claim that trial counsel did not present enough mitigating evidence, specifically referencing evidence related to his difficult upbringing, his genetic predisposition to drug addiction, his introduction to drugs at an early age, his criminal conduct being linked to his drug addiction, his ability to function as a contributing member of society when sober, and his lack of violent infractions while in prison. But trial counsel did present mitigation

evidence related to Mulder's troubled upbringing, unsupportive family,[2] addiction and rehabilitation efforts, and good character. Mulder fails to demonstrate that more mitigation evidence of the same nature would have had a reasonable probability of producing a different outcome at trial, and therefore the claim would not have been successful. *See Strickland v. Washington*, 466 U.S. 668, 695 (1984) (stating that the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" in order to demonstrate prejudice).

Based on all the above, we conclude the district court did not err by determining that Mulder had not demonstrated good cause based on his alleged incompetence.[3]

*Ineffective assistance of postconviction counsel*

Mulder claims ineffective assistance of first postconviction counsel constitutes good cause for the delay in filing the instant petition. While postconviction counsel's ineffectiveness may constitute good cause to

---

[2]We note that Mulder claims trial counsel were ineffective for failing to investigate and present testimony from Mulder's family. But at the penalty phase, the defense investigator testified that she met with Mulder's brother Craig, his sister Lisa, and his parents and that she attempted to procure their attendance and testimony on his behalf during the penalty phase. The investigator testified she was unsuccessful in her attempts.

[3]To the extent Mulder argues that he is incompetent to be executed, this claim is wholly separate from his claim that incompetency provided good cause to file an untimely and successive petition. We do not address Mulder's competency to be executed as there are other mechanisms by which a capital defendant may challenge the execution of his sentence based on his current mental status. *See* NRS 176.425; NRS 176.455.

file claims in a successive petition, those claims are subject to NRS 34.726(1); *Riker*, 121 Nev. at 235, 112 P.3d at 1077; *Pellegrini*, 117 Nev. at 869-78, 34 P.3d at 525-31, and must be raised within a reasonable time after they become available, *Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506.

Mulder filed his second postconviction petition in state court on December 9, 2014, nearly 5 years after remittitur issued from his first postconviction appeal on December 30, 2009. Mulder claims he filed his petition within a reasonable time when current counsel was appointed by the federal court in 2009, a stay was granted in federal court based on Mulder's incompetence, the stay was lifted in 2013, Mulder unsuccessfully sought reconsideration of that decision, another stay was granted for Mulder to exhaust his state remedies, and he filed the instant petition within 3 months of the second stay. He also avers that he filed the instant petition within a reasonable time of completing the investigation prompted by his meeting with a doctor.

Mulder fails to demonstrate he acted within a reasonable time.[4] Litigating his federal petition during the time between this court's issuance of remittitur from his first postconviction appeal and the filing of his second state postconviction petition does not amount to good cause. *See Colley v. State*, 105 Nev. 235, 773 P.2d 1229 (1989), *abrogated by statute on other*

---

[4]Mulder claims that the strict one-year timeline outlined in *Rippo v. State*, 132 Nev., Adv. Op. 11, 368 P.3d 729, 738 (2016), *vacated on other grounds by Rippo v. Baker*, 580 U.S. ___, 137 S. Ct. 905 (2017), does not apply to him as *Rippo* was decided after he filed this second petition. Notwithstanding the one-year timeline, we conclude the nearly 5-year gap between the resolution of Mulder's first postconviction appeal and the filing of the instant petition was not reasonable.

*grounds as stated in State v. Huebler*, 128 Nev. 192, 275 P.3d 91 (2012). Therefore, Mulder fails to demonstrate he raised this claim within a reasonable time, and the district court did not err by denying this good-cause claim.

*Intervening authority*

Mulder claims that intervening authority provides good cause for the delay in bringing one of his claims. Intervening caselaw may constitute an impedimental external to the defense that provides good cause for a delay where the "legal basis for [the] claim was not reasonably available." *Hathaway*, 119 Nev. at 252, 71 P.3d at 506 (quotation marks omitted).

Mulder alleges that *Hall v. Florida*, 572 U.S. ___, 134 S. Ct. 1986 (2014), provides good cause to bring claim 1 in his second petition: that he is categorically excluded from the death penalty because he is intellectually disabled. He posits that *Hall* invalidates this court's prior decision that he had not met the requirements for this exclusion because his intellectual disabilities presented after the developmental period (birth to 18 years of age). However, the Court specifically stated that age of onset was not at issue in *Hall*. *Id.* at 1993. And, more recently, the Court observed that "the onset of the[ ] deficits while still a minor" is a core element of the "generally accepted, uncontroversial intellectual-disability diagnostic definition." *Moore v. Texas*, 581 U.S. ___, 137 S. Ct. 1039, 1045 & n.3 (2017). Thus, Mulder fails to demonstrate *Hall* is intervening authority that provides good cause to argue that our requirement that the intellectual disability manifest during the developmental period has been invalidated.

Mulder also argues that *Hall* created a new consensus analysis for deciding whether a punishment is cruel and unusual and that the analysis considers the infrequent use of capital punishment against intellectually disabled persons. He alleges that the *Hall* analysis is different from previous caselaw because it requires consideration of professional literature and the consensus of the mental health community, as opposed to the legal community, and because it takes into account the actual sentencing practices and data.

The Court in *Hall* relied upon and frequently cited older cases when discussing its consensus analysis. 572 U.S. at ___, 134 S. Ct. at 1996-98; *see also Roper v. Simmons*, 543 U.S. 551, 562 (2005) (outlining the Court's evolution in arriving at the conclusion that juveniles cannot be sentenced to death, specifically noting the Court's prior determinations regarding national consensus as to the execution of juveniles and of intellectually disabled persons); *Atkins v. Virginia*, 536 U.S. 304, 315-16 (2002) (referencing a consensus of states that exempted the intellectually disabled from the imposition of the death penalty before concluding "[t]he practice . . . has become truly unusual, and it is fair to say that a national consensus has developed against it"). Indeed, *Atkins* referenced not only the trend among the states in conducting its consensus analysis but also literature from the American Association on Mental Retardation and the American Psychological Association as well as the input of various religious communities. 536 U.S. at 316 & n.21. The same varied consideration can be found in *Roper*, where the Court considered the rate at which states had abolished the execution of juveniles as well as professional literature and scientific and sociological studies regarding the differences between

SUPREME COURT
OF
NEVADA

(O) 1947A

10

juveniles and adults. 543 U.S. at 565-66, 569-70. The analysis in *Hall* thus is not new. Accordingly, we conclude the district court did not err in determining that Mulder had not demonstrated good cause based on intervening legal authority.

*Brady claim*

Mulder claims he can demonstrate good cause based on the suppression of material evidence by State actors. Under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, a prosecutor is required "to disclose evidence favorable to the defense when that evidence is material either to guilt or to punishment." *Huebler*, 128 Nev. at 198, 275 P.3d at 95 (internal quotation marks omitted). "To prove a *Brady* violation, the accused must make three showings: (1) the evidence is favorable to the accused, either because it is exculpatory or impeaching; (2) the State withheld the evidence, either intentionally or inadvertently; and (3) prejudice ensued, i.e., the evidence was material." *Id.* (internal quotation marks omitted). "Good cause and prejudice [to excuse a procedural bar] parallel the second and third *Brady* components; in other words, proving that the State withheld the evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice." *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003).

Mulder claims the State failed to disclose evidence concerning the caseloads of each defense attorney working on Mulder's case, provide audio or video recordings or a transcript of a witness's statement to police, and surrender documents related to the prosecutor's conversation with the

same witness.[5] We conclude he fails to demonstrate a *Brady* violation. Defense counsels' caseloads do not constitute favorable evidence relevant to Mulder's guilt or sentence. And Mulder has not demonstrated that the State possessed, or was required to produce, a recording or transcript of the witness's statement or that he was entitled to the prosecutor's notes. *See* NRS 174.235(1)(a), (2)(a).

Mulder also claims that the State only recently disclosed evidence that supports his claim that the conditions of his confinement as a capital inmate are cruel and unusual. A challenge to the conditions of confinement is not cognizable in a petition for a writ of habeas corpus, *see Bowen v. Warden*, 100 Nev. 489, 490, 686 P.2d 250, 251-52 (1984), and Mulder fails to demonstrate that evidence regarding the conditions of confinement would have been material to guilt or punishment. As such, he fails to establish a *Brady* violation. Accordingly, we conclude the district court did not err by rejecting the *Brady* claims as good cause.

*Fundamental miscarriage of justice*

Despite Mulder's failure to show good cause for the delay in bringing the second petition, "[t]his court may excuse the failure to show cause where the prejudice from a failure to consider the claim amounts to a fundamental miscarriage of justice." *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (internal quotation marks omitted). A fundamental

---

[5]To the extent Mulder argues he was not provided with proof that the witness was notified of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), this claim is belied by the record and he lacks standing to make it. *See Bowman v. United States*, 350 F.2d 913, 915 (9th Cir. 1965) ("[T]he privilege against self-incrimination is personal to the witness.").

SUPREME COURT
OF
NEVADA

(O) 1947A

12

miscarriage of justice requires "a colorable showing" that the petitioner is "actually innocent of the crime or is ineligible for the death penalty." *Id.* This court has limited actual innocence claims regarding a petitioner's eligibility for the death penalty to claims focusing on the elements of the crime and the aggravating circumstances as opposed to mitigating circumstances. *See Lisle v. State*, 131 Nev. 356, 362-68, 351 P.3d 725, 730-34 (2015) (holding that new mitigating evidence cannot be used to demonstrate actual innocence of the death penalty).

Mulder claims he can demonstrate a fundamental miscarriage of justice because he is ineligible for the death penalty based on his mental infirmities. Mulder fails to cite to any authority in support of this argument. He has not shown that he was ineligible for the death penalty in that he could not be *sentenced* to death; instead, he argues that he cannot be *executed* given his current mental status.

Mulder also claims that new mitigating evidence, or the cumulative effect of constitutional errors, makes it more likely than not that no reasonable juror would have imposed a sentence of death. Mulder fails to allege he is actually innocent of the crimes or to demonstrate he is ineligible for the death penalty based on actual innocence of the aggravating circumstances. Therefore, Mulder fails to demonstrate a fundamental miscarriage of justice would occur from the failure to consider his claims on the merits.

*Laches*

Mulder was required to overcome the presumption of prejudice to the State in its ability to retry him by demonstrating a fundamental miscarriage of justice. *See* NRS 34.800(2). As outlined above, Mulder's

petition does not demonstrate that he is actually innocent of the crime or is not eligible for the death penalty. Therefore, he has not demonstrated a fundamental miscarriage of justice to rebut the presumption under NRS 34.800. *See Pellegrini*, 117 Nev. at 875, 34 P.3d at 529 ("[I]t is conceivable that a petitioner could demonstrate good cause for failure to comply with the one-year time limit [of NRS 34.726] and actual prejudice, but laches would nevertheless bar the claim because of prejudice to the State and failure to demonstrate a fundamental miscarriage of justice.").

*Motion for stay and guardian ad litem*

Mulder challenges the district court's denial of his motion for a stay based on incompetency. He acknowledges that this court has never held there is a right to competency in postconviction habeas proceedings, and there is no provision for postconviction competency in the state constitution or in statute. *Cf.* NRS 178.400(1) ("A person may not be tried or adjudged to punishment for a public offense while incompetent."). As there is no state provision requiring a stay of postconviction proceedings based on incompetency, we conclude the district court did not err by denying Mulder's motion for a stay.

Mulder also challenges the district court's denial of his motion for the appointment of a guardian ad litem. He relies on NRCP 17(c) and NRS 12.050(3). NRCP 17(c) applies to persons "who do[ ] not have a duly appointed representative" and provides that the court shall appoint a guardian ad litem for an "incompetent person not otherwise represented in an action." And the purpose of NRS 12.050 is to protect incompetent persons when they are a party to an action. *Baker v. Baker*, 59 Nev. 163, 171-72, 87 Nev. 800, 803 (1939). While this court has recognized "next

friend" status to allow for the prosecution of a writ of habeas corpus on behalf of an incompetent person, *see Calambro v. Second Judicial Dist. Court*, 114 Nev. 961, 969, 964 P.2d 794, 799 (1998), Mulder is represented by counsel and has been so represented since current counsel was appointed in 2009. Mulder fails to make clear why a guardian ad litem is necessary to protect his interests or to initiate a petition when the instant petition has been filed and he has a representative (counsel) to litigate on his behalf.[6] Accordingly, we conclude the district court did not err in denying Mulder's motion for a guardian ad litem.

Having considered Mulder's contentions and concluded that they lack merit, we

ORDER the judgment of the district court AFFIRMED.[7]

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

---

[6]We find no merit in the argument that current counsel's failure to file the instant petition sooner establishes counsel is not acting in Mulder's best interests, thereby demonstrating the need for a guardian ad litem.

[7]The Honorable Michael Cherry, Justice, did not participate in the decision of this matter.

cc: Hon. Michelle Leavitt, District Judge
Federal Public Defender/Las Vegas
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A